266 P.2d 68]

[Crim. No. 2902.   First Dist., Div. Two.   Feb. 2, 1954.]

THE PEOPLE, Respondent, v. DOYLE LEE QUARLES, Appellant.

Marvin J. Colangelo, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Arlo E. Smith, Deputy Attorney General, for Respondent.

NOURSE, P. J.—Defendant, Doyle Lee Quarles, was tried without a jury and convicted on two counts of an information charging him with violation of section 192, Penal Code (involuntary manslaughter) and of section 501, of the Vehicle Code (committing an unlawful or negligent act while driving under the influence of liquor). He appeals from the judgment and from an order denying defendant's motion for a new trial. However the record does not show any motion for a new trial was made or any order denying one. Probation was denied.

The accident occurred on September 5, 1952, at approximately 11:15 p. m. on the Eastshore Highway in Emeryville, California. Defendant's car, a 1941 Buick, was proceeding north on a divided highway when it crossed into the southbound lane, sideswiped a southbound car and then hit a Pontiac, overturning it. An infant riding in the Pontiac died as a result of the injuries and other passengers were hurt.

Two men who had witnessed the accident stopped immediately, going first to the overturned Pontiac to give what assistance they could but observing shortly thereafter that defendant was lying on the roadway to the left of the Buick. A highway patrol officer, arriving soon after the accident happened, found the appellant lying in the roadway at the left of the Buick, his feet practically under the edge of the

car, his head away from it. No one else was seen in or near the Buick. Witnesses testified that immediately prior to the accident they had observed an unidentified man driving the Buick, had seen no one else in the car but that as the convertible top was up they did not have a clear view of the rear seat.

Defendant and the passengers in the Pontiac were taken to a hospital. There defendant was asked by Officer Sabo if he would permit a blood sample to be taken for analysis of alcoholic content. He agreed. The doctor asked and defendant again agreed. The blood taken contained .286 per cent alcohol; .150 per cent is sufficient for intoxication.

Counsel for appellant, who at appellant's request was appointed by this court to represent him on this appeal, sets forth the following arguments:

I. The evidence was insufficient to support the verdict and the judgment.

II. The court made two incorrect rulings, each of which constitutes reversible error.

I. Evidence insufficient to support the verdict. ▆ Appellant claims there was no proof that he was the driver of the car, pointing out as evidence to the contrary that he was found outside the car on a cushion with all the doors of the automobile closed, that if he had fallen from the driver's seat he would have been on the bare ground or roadway and the car door would have remained open. Appellant did not know whether he was driving or not and had no recollection of the accident, but testified that earlier in the evening he was accompanied by several companions and that two of them had driven the car during that evening. Two hats and a half-filled bottle of wine were found in the back seat which appellant deems significant to show others were in the car at the time of the accident, that it could be inferred one of the others was driving and that appellant was in the back seat with the bottle of wine. The fact that witnesses had seen only the driver in the Buick when the car passed them was not conclusive evidence that there had been only one man in the car due to the fact that when the top of a 1941 Buick convertible is up an outside observer cannot determine whether or not a person is in the rear of the car. In arguing for a reversal on the lack of evidence to support the conviction, appellant cites *People* v. *Flores*, 58 Cal.App.2d 764 [137 P.2d 767], from which he quotes (p. 769): "Ordinarily, the deduction

to be drawn from the circumstances shown in evidence is for the trier of facts, but in this instance it is manifest that every fact proven is consistent with the reasonable conclusion that the appellant did not participate in the theft of the automobile. There is, therefore, a failure of proof in particulars necessary to conviction of the crime of grand theft, and the question is one of law for the court.'' *People* v. *Kessler*, 62 Cal. App.2d 817, 821 [145 P.2d 656], is quoted as giving the correct rule for rendering a decision on circumstantial evidence: ''. . . there could be no conviction unless the facts or circumstances proved were not only entirely consistent with the theory of guilt but irreconcilable with any other rational conclusion.'' In summary appellant states that examining all the facts together, there are uncontradicted facts which point to the reasonable conclusion that appellant could not have been driving the car at the time of the accident, and for this reason the appellate court can examine the insufficiency of the evidence as a matter of law, and is not bound by the findings of the trial court.

Respondent answers that the rule is that even though the appellate tribunal might believe the circumstances reasonably pointed to the innocence of the defendant, it would not be justified in interfering with the determination of the trier of fact as long as the circumstances reasonably justified the verdict, citing cases, and furthermore, on the evidence the only reasonable conclusion is that defendant was driving the Buick at the time of the collision.

Here the three witnesses, who appeared at the scene immediately following the collision, testified that they saw no other person in or about the Buick. Hence the trial court reasonably concluded that the defendant, and he alone, was the operator of the Buick at the time of the accident.

II. Erroneous rulings of the court.

██ Appellant contends the court erred in overruling an objection to testimony given by one witness in which he referred to the appellant as the driver of the car. He asserts this was an unsolicited conclusion and the court erred in permitting the statement to be included as probative evidence. Respondent contends that whether the witness's statement was an observed fact or merely his conclusion could have been brought out on cross-examination. But in any event it was not prejudicial in view of the fact that the case was not being tried by a jury and the trial court found that the defendant was in fact the driver of the car.

■ Appellant argues that the trial court erred in permitting evidence of the blood test of sobriety to stand, and in denying counsel the opportunity to show the mental condition of defendant at the time he gave his permission to have the blood test taken. This is predicated on his volunteer statement that at that time appellant was in a very confused mental state and was not mentally able to give his consent. The court sustained the objection to counsel's attempt to elicit from the police officer a statement as to defendant's mental condition at the time he gave his consent, the court saying, "I only think that you could go into that if the blood test were offered, right now I think it is immaterial." Appellant contends that in view of the fact that the blood test was introduced in evidence, the mental condition of defendant was material, and the objection should have been overruled. He claims that his privilege not to be forced to give self-incriminating evidence was grossly violated, and the due process clause of the Fourteenth Amendment was similarly abused. Appellant cites the United States Supreme Court as specifically condemning this practice in *Rochin* v. *California*, 342 U.S. 165, stating at page 179 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396] of the opinion that "blood taken from his veins" without one's consent is inadmissible. However the Rochin case differs materially on its facts from the case before us. In that case officers illegally entered defendant's place of residence. The defendant, upon being questioned concerning two capsules which were on a table beside him, grabbed the capsules and swallowed them. A struggle ensued, the officers forcibly attempting to extract the capsules and failing handcuffed defendant and forcibly took him to the hospital where his stomach was pumped and the two capsules recovered, which proved to contain morphine. The District Court of Appeal, Second District, of the State of California, held that the evidence though illegally obtained was admissible, and the Supreme Court of California denied a hearing. The United States Supreme Court reversed the conviction because it was obtained by methods violative of the due process clause of the Fourteenth Amendment. The only reference to the taking of blood from the veins was made in a concurring opinion by Justice Douglas in which he states (p. 179): "But I think that words taken from his lips, capsules taken from his stomach, blood taken from his veins are all inadmissible provided they are taken from him without his con-

sent. They are inadmissible because of the command of the Fifth Amendment."

Respondent answers that at the trial defense counsel expressly stipulated that the blood sample was withdrawn with defendant's consent. The stipulation read in part: ". . . the defendant was taken to the Permanente Hospital following the accident, and that there Dr. Toohe withdrew a sample of defendant's blood after asking the defendant if he would agree to this. The defendant agreed." At the close of the stipulation counsel for the State asked, "Is that stipulation acceptable? Mr. Sperbeck [counsel for defendant] : That is acceptable, and I will so stipulate." Thus defendant is precluded from objecting to the court's admission of the results of the blood tests. ▮ In further answer to appellant's argument, respondent cites *People* v. *Haeussler,* 41 Cal.2d 252 [260 P.2d 8]. In this case a woman was convicted of manslaughter in the driving of a vehicle and of committing an unlawful act while driving a vehicle under the influence of intoxicating liquor. Blood was taken from her veins while she was unconscious, part of which was analyzed to ascertain the alcoholic content. The case cited by appellant, *Rochin* v. *California,* was discussed at great length and distinguished from the Haeussler case. In the latter case the court said (p. 258): "Without deviation, this court has held that competent evidence, although improperly obtained, is admissible in a criminal prosecution against the person from whom the evidence is taken. [Citing cases]." That case merely followed the well settled doctrine in California, dating from *People* v. *Mayen,* 188 Cal. 237 [205 P. 435, 24 A.L.R. 1383] (decided February 21, 1922), in which our courts have rejected the doctrine of the federal courts relating to the admission of evidence in a criminal case taken from a defendant without his consent.

Judgment affirmed.

Dooling, J., and Kaufman, J. concurred.