[Crim. No. 585. Fifth Dist. June 3, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM
STEPHEN STROUD, Defendant and Appellant.

Chain & Younger, Morris B. Chain and Timothy Lemucchi for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edsel W. Haws and Charles P. Just, Deputy Attorneys General, for Plaintiff and Respondent.

STONE, J.—Defendant was charged by an information with "wilfully, unlawfully, feloniously and with malice aforethought" murdering his wife. A jury found him guilty of voluntary manslaughter, and this appeal followed. Defendant contends the shooting was accidental. He testified that he threatened to commit suicide, using his rifle, that his wife sought to dissuade him, a struggle ensued and the gun discharged, killing her.

The victim was shot three times, twice in the front and once in the back. A few minutes after the shooting, defendant called Deputy Sheriff Ben Austin at 6 p.m., who arrived very shortly. Defendant gave Austin a version of the shooting

which differed from that given at the trial. Approximately two hours after the shooting, while being interrogated by law officers and an investigator from the district attorney's office, defendant's statements were consistent with those made to Austin, namely, that he shot his wife because she was so drunk she could not put a sheet on the bed.

Before he talked with Deputy Sheriff Austin, and also before he made a taped statement, defendant was advised of his rights in accordance with the *Miranda* requirements (*Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]). Each time he acknowledged that he understood the admonitions, and waived his right not to talk to the officers. Nevertheless, defendant now contends the court erred by admitting the taped statement in evidence, not because the confession was the result of coercive interrogation but upon the sole ground that he did not understand his rights as explained to him. He asserts that his alcohol blood content made cognition impossible and consequently he could not knowingly, intelligently and understandingly waive his constitutional rights.

Briefly, the circumstances surrounding the making of the taped statement are these: Tehachapi, where defendant lived and the shooting occurred, is a remote area in Eastern Kern County. Almost immediately after he shot his wife in the bedroom of their home, defendant called Ben Austin, the resident deputy sheriff and a personal friend, stating that he killed his wife. The call was made at 6 p.m. and Austin arrived within 15 minutes. He went directly to the bedroom where the body of Mrs. Stroud lay on the bed, bleeding; he felt for the pulse, could find none, and called Dr. Vincent Troy. While waiting for the doctor, Austin sat down at the kitchen table with defendant, who wanted to tell Austin "all about it." The officer interrupted him to tell him that he would have to advise him of his rights, to which defendant replied: "I know them as well as you do. I know that you're not going to take advantage of me." The officer replied: "I will still have to advise you of your rights"; which he did. Defendant waived his right not to talk, and related the events surrounding the shooting. Subsequently, a sheriff's lieutenant, an investigator from the district attorney's office, and an employee of the county crime laboratory arrived. A tape recorder was set up and at 8:30 the sheriff's lieutenant read the *Miranda* admonitions to defendant, who waived his rights and freely made statements, some narrative and some

pursuant to interrogation. Defendant was taken from his home in Tehachapi to the Kern County General Hospital in Bakersfield, where a blood sample was taken at 10 p.m. A laboratory analysis revealed an alcohol content of .229 milligrams.

Defendant moved to suppress the statements that were tape recorded during the interrogation that took place approximately 8:35 p.m. Interestingly enough, no motion to suppress was directed at the statements made during the conversation with Austin between 6:15 and 6:30 p.m. The hearing on motion to suppress lasted three days and, although defendant did not testify, his attorney contended that defendant's alcohol blood content prevented a reasoned and intelligent waiver of his rights. In addition to the witnesses who were present shortly after the shooting and during the time defendant was interrogated, doctors testified as expert witnesses. They hypothesized as to defendant's mental capabilities at the time of the interrogation and formulated their opinions after considering defendant's alcohol blood content at 10 p.m., his tape-recorded remarks made at 8:30 p.m., his case history, their interviews with him, and the reports of psychiatrists who examined him in the course of the criminal proceedings.

■ Before analyzing the evidence, we are met with defendant's several questions concerning the rules governing a review of this character. First, he admonishes that this court must "view the totality of the circumstances" in determining whether he knowingly and intelligently waived his right under the Fifth Amendment to remain silent. This guideline is correctly stated. (*Greenwald* v. *Wisconsin,* 390 U.S. 519 [20 L.Ed.2d 77, 88 S.Ct. 1152] ; *Clewis* v. *Texas,* 386 U.S. 707 [18 L.Ed.2d 423, 87 S.Ct. 1338] ; *Fikes* v. *Alabama,* 352 U.S. 191, 197 [1 L.Ed.2d 246, 250, 77 S.Ct. 281] ; *People* v. *Sanchez,* 70 Cal.2d 562, 571 [75 Cal.Rptr. 642, 451 P.2d 74] ; *In re Cameron,* 68 Cal.2d 487, 498 [67 Cal.Rptr. 529, 439 P.2d 633] ; *People* v. *Lara,* 67 Cal.2d 365, 383 [62 Cal.Rptr. 586, 432 P.2d 202].) Second, defendant advises that in looking at the totality of the circumstances it is the duty of a reviewing court to make "an independent examination of the whole record." We agree that this too, is correct. (*Clewis* v. *Texas, supra; Davis* v. *North Carolina,* 384 U.S. 737, 741-742 [16 L.Ed.2d 895, 898-899, 86 S.Ct. 1761] ; *Blackburn* v. *Alabama,* 361 U.S. 199 [4 L.Ed.2d 242, 80 S.Ct. 274] ; *People* v. *Sanchez, supra; People* v. *Lara, supra.*)

From these two rather broad guidelines, defendant appears

to conclude that the reviewing court's examination of the record is a fact-finding process, that is, in making an independent examination of the whole record the reviewing court is free to reweigh the evidence in determining the totality of the circumstances. We find no authority for this proposition in any of the cases. The United States Supreme Court, in making an independent review of the record to ascertain the totality of circumstances surrounding the making of a confession, has consistently refrained from overturning a trial court's resolution of conflicting facts. For example, in *Fikes* v. *Alabama* (1957) *supra,* 352 U.S. 191, the court relied upon the state's evidence, standing alone, in holding the confessions were not voluntary. In *Payne* v. *Arkansas* (1958) 356 U.S. 560 [2 L.Ed.2d 975, 78 S.Ct. 844] a finding that the confession was coerced is based upon "the admitted facts, set out above." In *Davis* v. *North Carolina, supra* (1966) 384 U.S. 737, *Clewis* v. *Texas, supra,* and *Greenwald* v. *Wisconsin, supra,* the court concluded from the record "wholly apart from the disputed facts" that each confession was coerced. In *Brooks* v. *Florida* (1967) 389 U.S. 413 [19 L.Ed.2d 643, 88 S.Ct. 541] we find the explicit statement: "Brooks says that he was brutally beaten by one officer while the other was taking his statement. However, we do not consider this claim because the officer denied it and the judge disbelieved Brooks' testimony."

These cases make it clear that the United States Supreme Court has grounded its determination of voluntariness upon evidence other than disputed testimony. The landmark case, *Jackson* v. *Denno,* 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205], although primarily treating with the procedure governing the admission of a disputed confession in a jury trial, points out the forum in which conflicting evidence of voluntariness is to be resolved. The court said, at page 1789 [378 U.S. at p. 391, 12 L.Ed.2d at p. 924] : "This is not a case where the facts concerning the circumstances surrounding a confession are undisputed and the task is only to judge the voluntariness of the confession based upon the clearly established facts and in accordance with proper constitutional standards. Here there are substantial facts in dispute: . . . Whether Jackson is entitled to relief depends upon how these facts are resolved, for if the state is to be believed we cannot say that Jackson's confession was involuntary, whereas if Jackson's version of the facts is accepted the confession was involuntary and inadmissible. . . . It is New

York, therefore, not the Federal habeas corpus court, which should first provide Jackson with that which he has not yet had and to which he is constitutionally entitled—an adequate evidentiary hearing productive of reliable results concerning the voluntariness of his confession.''

The California Supreme Court has formulated similar guidelines. (*People* v. *Sanchez, supra; People* v. *Lara, supra,* 67 Cal.2d at p. 392; *People* v. *Underwood,* 61 Cal.2d 113, 121 [37 Cal.Rptr. 313, 389 P.2d 937]; *People* v. *Berve,* 51 Cal.2d 286 [332 P.2d 97].) ▇ Thus an appellate court viewing the totality of circumstances to ascertain whether a defendant's statements were voluntary and the product of a rational intellect, must accept the resolution of conflicting evidence by the trier of fact where the evidence upon which the lower court relied is not so improbable as to be entirely unworthy of belief. (*People* v. *Aikens,* 70 Cal.2d 369, 378 [74 Cal.Rptr. 882, 450 P.2d 258]; *People* v. *Massie,* 66 Cal.2d 899, 914 [59 Cal.Rptr. 733, 428 P.2d 869]; *People* v. *Wein,* 50 Cal.2d 383, 399 [326 P.2d 457]; *People* v. *Lyons,* 47 Cal.2d 311, 319 [303 P.2d 329].)

Guided by the rules discussed above, we turn to the proceedings in the trial court. At the conclusion of the three-day pretrial hearing on motion to suppress the taped statement, the judge took the matter under advisement. The following day he denied the motion, and in doing so complied with the requirement of *Jackson* v. *Denno, supra,* that a trial judge's conclusion as to voluntariness of a confession must be clearly evident from the record. He ruled:

''The court has considered all of the evidence, and it is denying the defendant's motion to suppress the statements. However, I want to make a few comments and findings for the record at this time.

''It is the opinion of the court that the investigating officers adequately advised the defendant of all his constitutional rights. There is no evidence that the defendant was tricked or threatened into making the statements. And the statements were made voluntarily. The defendant was under the influence of alcohol at the time that he made these three separate waivers of these constitutional rights, and from the evidence the court is satisfied that this intoxication had some effect on his higher faculties and his reasoning processes. However, the court finds that after a view of all of the evidence presented these last three days that the defendant was rational, he was in possession of his faculties, he could comprehend what was

going on about him, and he was able to understand his constitutional rights as recited to him by the investigating officers."

Defendant objects to the sufficiency of the ruling. First, he contends it does not reflect that he separately waived each of the *Miranda* rights as they were recited to him. We reject the contention. Although the admonitions prescribed by *Miranda* have been characterized as "didactic" (*People* v. *Fioritto,* 68 Cal.2d 714 [68 Cal.Rptr. 817, 441 P.2d 625]), voluntariness does not rest upon any liturgical formula. It must be clear that a defendant is made aware of all his rights as delineated in *Miranda,* but cognition, not formalism, is the test. The ultimate questions which a judge must decide are whether a defendant was advised of his rights, whether he understood them, and whether, understanding them, he knowingly, intelligently and voluntarily waived them. The manner in which the *Miranda* admonitions are given is certainly relevant to a determination of these ultimate facts, but the form is not controlling.

Defendant's second objection to the ruling is that it does not clearly reflect that the trial judge was satisfied beyond a reasonable doubt that defendant knew and understood his rights and made a rational waiver of them. The Attorney General argues that proof beyond a reasonable doubt is not a *Miranda* requirement. The thrust of his argument is that *Miranda* is silent on this point and that by not formulating a standard or degree of proof the United States Supreme Court, sub silentio, refrained from placing the burden upon the prosecution to prove voluntariness beyond a reasonable doubt.

Courts other than the United States Supreme Court have articulated the degree of proof required for the introduction in evidence of a confession. We learn from 79 Harvard Law Review 1069, *Developments in the Law: Confessions* (1966): "As for the burden of persuasion, most jurisdictions have traditionally required that the prosecution bear it in voluntariness cases, and there is a split among these jurisdictions in regard to whether the persuasion must be by a 'preponderance of the evidence' or 'beyond a reasonable doubt.'" (To the same effect, see *The Role of a Trial Jury in Determining the Voluntariness of a Confession* (1964) 63 Mich.L.Rev. 381, at p. 385, fn. 33.)

From a digest of the cases it appears that the degree of proof required depends upon whom the burden of proof

rests in the particular jurisdiction. Where the defendant has the burden of showing that a confession produced by the prosecution is not voluntary, the degree of proof is by a preponderance of the evidence. Where the People have the burden of proving that a confession is voluntary, the degree of proof is beyond a reasonable doubt. We find no case explicitly defining the degree of proof required in this state, but the burden of proving that a questioned confession meets the test of admissibility has been placed upon the prosecution. (*People* v. *Davis,* 66 Cal.2d 175, 180-181 [57 Cal.Rptr. 130, 424 P.2d 682].) It follows, we think, that the degree of proof required to meet that burden is proof beyond a reasonable doubt. We reach this conclusion after a review of reasons given by the United States Supreme Court in *Jackson* v. *Denno, supra,* for requiring a trial judge to determine voluntariness of a confession out of the presence of the jury. In the eyes of the jurors a confession is prima facie evidence of a defendant's guilt, and once they hear it the defendant is placed in the well nigh impossible position of overcoming this prima facie evidence of his guilt which emanated from his own lips. Hence to hold that the trial judge's ruling is to be grounded upon anything less than proof beyond a reasonable doubt would seem to be anomalous in a legal system that requires the People to prove a defendant's guilt beyond a reasonable doubt.

Moreover, the mandate in *Jackson* v. *Denno, supra,* that a jury may not hear a confession until the trial judge has satisfied himself that it was made voluntarily would be thwarted were the trial judge who makes such threshold determination to permit a jury to hear a confession even though he had a reasonable doubt that it was voluntary. The judge would be abdicating to the jury the initial as well as the ultimate determination of voluntariness, and the end result would be the same as under the New York procedure condemned in *Jackson* v. *Denno, supra.* (See *Bruton* v. *United States,* 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620, 1624] ; *Sims* v. *Georgia,* 385 U.S. 538 [17 L.Ed.2d 593, 87 S.Ct. 639].)

Accepting defendant's premise that the trial judge must be satisfied beyond a reasonable doubt that a confession meets the constitutional requirements for admission in evidence, we are not persuaded that the trial judge, here, did not use that standard in reaching his decision that defendant knowingly and intelligently waived his rights, under the *Miranda* line of cases, before he confessed. True, as defendant points out,

the ruling does not use the specific language, "I believe beyond a reasonable doubt," but neither does a judge use such language in finding a defendant guilty after a court trial. For that matter, a jury verdict of guilty need not contain the language "beyond a reasonable doubt," yet that is the standard to be met in each instance. The language used by the trial judge, here, left no doubt that he was convinced beyond a reasonable doubt. He said:

"However, the court finds that after a view of all of the evidence presented these last three days that the defendant was rational, he was in possession of his faculties, he could comprehend what was going on about him, and he was able to understand his constitutional rights as recited to him by the investigating officers."

 With the foregoing guidelines in mind, we turn to a review of the evidence. The sole question is whether defendant, despite the amount of alcohol he had consumed, was able to intelligently waive his constitutional rights after hearing the *Miranda* admonitions, since all other circumstances point to a valid waiver. At the time of the shooting, defendant was 59 years of age, an intelligent, articulate, college graduate, holding a degree in geology from Pomona College. Deputy Sheriff Austin, who was called by defendant to his home, was defendant's friend, and defendant wished to tell him about the shooting. It was Austin who interrupted defendant in order to give him the *Miranda* warning. Not only did the interrogation take place in the familiar surroundings of defendant's home, but there was no physical or psychological abuse or prior coerced confession.[1]

Keeping in mind the rule that our review of the record is not a fact finding process, we measure the totality of circumstances in the light of uncontroverted evidence and the trial court's resolution of conflicting evidence. About the only pertinent uncontradicted fact is that at 10 p.m. defendant's alcohol blood content was .229 milligrams. But a blood alcohol content of .229, standing alone, neither proves nor disproves defendant's capacity to understand and rationalize, since there is no established statutory or decisional standard correlating blood alcohol content with cerebral impairment of which this court can take judicial notice. Consequently the

---

[1] Cf. *People* v. *Lara, supra,* 67 Cal.2d 365, where a waiver by a 17-year-old Mexican American whose IQ was between 65 and 71, who had between a ninth and tenth grade education, who had been drinking prior to being questioned at the police station, was held to be valid.

import of and the inference to be drawn from an alcohol blood content of .229 must rest upon other relevant evidence. This is emphasized by questions directed to the doctors concerning the fact that blood alcohol content of .15 is generally accepted as affecting the average person's ability to drive a motor vehicle. On this point, the medical witnesses distinguished muscular control and reflex action in driving, on the one hand, and cerebration or the ability to think, on the other. In addition to the evidence of alcohol blood content, all of the doctors considered defendant's response to questions, his voluntary statements, his manner of speaking, his syntax, grammar and mode of speech as revealed by the taped statements. These expert witnesses also read reports by the psychiatrists who examined defendant, they interviewed defendant and considered his weight, age, past history of his use of alcohol, his tolerance for alcohol, his actions following the shooting, such as telephoning Austin, and his recollection of details. After weighing these various factors, two doctors hypothesized that defendant's faculties of judgment and decision-making were impaired to the extent that he could not make an intelligent waiver of his *Miranda* rights, while the other two doctors thought the impairment of defendant's higher mental faculties was minimal. From his questions, it is apparent the trial judge was impressed by the testimony that defendant, upon realizing he had shot his wife, was shocked into a state of sobriety.

Thus as to the expert medical testimony, the trial court accepted the testimony of the two doctors who thought the impairment of defendant's higher mental faculties was minimal. Under the rule that a reviewing court will not set aside a trial court's resolution of conflicting testimony unless it is inherently improbable, this finding must be accepted by us.

The medical testimony was only one aspect of the totality of circumstances viewed in our independent examination of the record; the following evidence additionally supports the determination of the trial judge. Immediately after the shooting, defendant telephoned Deputy Sheriff Austin, his friend, to whom he said: ''Ben, this is Steve. I just killed my wife.'' This was at 6 p.m. Austin arrived in a few minutes, and called a doctor. While the doctor was examining the body, defendant walked into the room and talked with him. The doctor testified that:

''He said he was guilty. That he did it. He didn't want a long trial. He didn't want to go to jail. Or he didn't want to go to prison. He just wanted to get it over with.''

.The doctor said he was busy examining the body and did not look up, but that defendant spoke in a conversational tone of voice and was not emotional, that he understood everything defendant said, and that defendant talked like a sober person.

Deputy Sheriff Austin testified that he had known defendant for some two years; that he had seen him when he was drinking and pretty intoxicated, and when he was not drinking; that defendant carried his alcohol very well; that at the time the statements were made he could smell alcohol on defendant's breath and his speech was a little hesitant, but did not appear "too slurred"; that he was talking low but Austin did not have difficulty in understanding him. Pursuant to questioning by the judge, Austin testified that defendant obviously had been drinking but that he was not drunk; that he was rational and answered questions intelligently and sensibly; that defendant had no problem in recognizing acquaintances; that he had no difficulty in walking, standing, getting out of his chair, and that he did not stumble, stagger or lose his balance.

Lieutenant Shuell, who advised defendant of his constitutional rights and asked him if he understood them, testified that defendant stated he did understand them and that Ben Austin had already explained them to him. Lieutenant Shuell testified that he detected an odor of alcohol but defendant did not appear to him to be drunk.

The testimony of these percipient witnesses supports the ruling of the trial judge that defendant understood and knowingly and intelligently waived his right not to talk to the officers.

There is other evidence whicn supports the trial judge's determination that defendant knowingly and intelligently waived his rights, although such evidence could not have influenced the judge's decision because it was adduced during the trial after the statement had been admitted. It consists mostly of defendant's own testimony presented by way of defense or rebuttal. The question arises whether, in making an independent examination of the entire record, we are precluded from considering evidence admitted after the confession was received in evidence. On this point, the United States Supreme Court said, in *Blackburn* v. *Alabama, supra,* 361 U.S. 199, at pages 209-210 [4 L.Ed.2d 242, at pp. 249-250, 80 S.Ct. 274]: "We take note also of respondent's argument that our decision must be predicated solely upon the evidence introduced by defendant before admission of the confes-

sion. . . . But we reject the notion that the scope of our review can be thus restricted. Where the involuntariness of a confession is conclusively *demonstrated at any stage of a trial,* the defendant is deprived of due process by entry of judgment of conviction without exclusion of the confession." (Italics added.)

▆ Conversely, evidence introduced at any stage of the trial, bearing upon the ultimate fact whether defendant knowingly and intelligently waived his right to remain silent, is likewise to be considered by the reviewing court. Such evidence is part of the record and it reflects upon the totality of circumstances surrounding the waiver.

▆ In his testimony, defendant related events before and after the shooting, but he never categorically denied understanding his *Miranda* rights as related to him by Austin and by the other officers, nor did he say directly that he did not knowingly and intelligently waive them. He said simply that his recollection of these events was vague, and that he did not remember certain things, yet he testified about other events before and after the shooting, in great detail. Most damaging to his position on this appeal is his testimony that after calling Deputy Sheriff Austin and while awaiting his arrival, he turned over in his mind whether he should tell the officers that he had been involved in a dispute with his wife over his impotency. He related that for some period of months his wife had chided him about this shortcoming, which bothered him a great deal. He said that after thinking it over he decided to tell the officers that he killed his wife because she was so drunk she could not put a sheet on the bed; and this is what he told Austin and, later, said in the tape recording. It is significant that defendant was able to think his problem through and, without becoming confused, relate his story to Austin and give much the same statement some two hours later during the taped interrogation.

Hence defendant's testimony concerning his reasoning processes after the shooting and before the officers arrived reflects that he understood his predicament and that he carefully thought through what he was going to tell the officers. This testimony is incompatible with the contention that he was not rational at the time he waived his *Miranda* rights before telling the contrived story.

In any event, the substantial evidence discussed above supports the trial judge's finding that defendant understood his *Miranda* rights which were read to him, and that his waiver

of those rights was the product of a rational act and a free will.

Defendant presents two additional points, neither of which was raised in the trial court. ██ First, he asserts that Austin, by not immediately calling defendant's sister, violated his constitutional rights. He reaches the constitutional point circuitously by arguing that his sister would have obtained an attorney for him had the call been made. Suffice it to say that in addition to the fact the issue was not raised below, defendant never asked for an attorney, nor did he ask that his sister obtain the services of an attorney for him. His sister knew of the shooting for at least two hours before she mentioned an attorney; she first discussed an attorney with defendant when he was about to be taken to the sheriff's office in Bakersfield.

██ The other point not raised below is the contention that the trial court erred in receiving in evidence a tape recording of a monitored conversation between defendant and two friends, that took place while defendant was in the county jail. When one of the visitors was on the witness stand the district attorney asked him:

"Q. Well, do you recall that when you heard the tape with Mr. Dodd, my investigator, that there was a transcription that he had that you initialed at that time? Is that right?

A. Yes.

Q. And you recognized this transcription as being what was said on the tape or apparently what was said on the tapes. Is that right?

A. I think I okayed it.

MR. CHAIN: If your honor please, I submit that if the witness has a clear recollection what the conversation pertained to, he has a right to testify from his own recollection; and if he doesn't, then he has a right to refresh his memory from the transcription that he has already approved.

THE COURT: I think that is correct, Mr. Chain.

MR. CHAIN: So if he has a fresh recollection, I would like to have him testify from that. If he hasn't, then he can refresh his memory from the transcription that he says he heard and approved.

Q. (By MR. FARR) Mr. Lindenfeld, would you, as best you can recollect now, give us a summary of what you said and what Mr. Stroud said about the happening, about the shooting?"

If this statement to the court did not conclusively waive.

any objection to introduction of the monitored conversation, what followed surely did. After the witness testified concerning the conversation to the best of his recollection, on cross-examination defense counsel questioned him about the substance of the conversation and, producing the tape, said: ''If your honor please, I would like to have this introduced in evidence as defendant's exhibit.'' The district attorney said he had no objection, and the court ordered a transcription of the taped conversation admitted in evidence as defendant's Exhibit B.

Thus the record is clear that defense counsel did not object to the introduction in evidence of the monitored conversation to which he now objects on appeal, and if there was error defendant affirmatively aided in its commission, the earmark of invited error. (*People* v. *Phillips,* 64 Cal.2d 574, 580, fn. 4. [51 Cal.Rptr. 225, 414 P.2d 353] ; *Lynch* v. *Birdwell,* 44 Cal. 2d 839, 846 [285 P.2d 919].)

The judgment is affirmed.

Conley, P. J., and Gargano, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 30, 1969.