[Crim. No. 19510. Second Dist., Div. One. Oct. 6, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
CHOLLY MOORE, Defendant and Appellant.

## COUNSEL

I. Mark Bledstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**LILLIE, Acting P. J.**—Defendant was charged with three counts of felony drunk driving (Veh. Code, § 23101) and two counts of involuntary manslaughter (Pen. Code, § 192, subd. 3(a)) arising out of his operation of a motor vehicle. A jury convicted him as charged recommending county jail confinement for the manslaughter convictions. Motions for new trial and probation having been denied, defendant was sentenced to state prison on the drunk driving counts (each to run concurrently) and to the county jail on the two manslaughter counts (each such count to run concurrently with the other as well as with the state prison terms for drunk driving). The appeal is from the judgment.

Around 9:15 p.m. on May 17, 1970, defendant was driving on Pacific Coast Highway near Zuma Beach; the highway consisted of four lanes, two in each direction. Defendant (in a Mustang), although southbound, was observed in the fast northbound lane (over the double line) by the driver of a following car, Mr. Bauer, who stated that there were then only one or two cars "at the most" southbound ahead of him. It was a clear evening, and defendant's car momentarily disappeared from Bauer's view as it went around a bend. He then heard a loud crash. As Bauer, in turn, rounded the bend, another car approached him in the northbound lane; its front was crushed, its left tire was flat, and sparks were coming from the bottom of the vehicle.[1] He then passed another car, damaged, in the center divider (represented by the double yellow line).

Bauer parked his car about 150 yards down the highway and returned to the damaged car (a Mustang). Approaching from the driver's side, he noticed that the door was closed and crushed. A man was sitting in the right rear seat, and Bauer asked him if he was injured; the man said, "No." Previous to his arrival, Bauer saw nobody leave the Mustang. He then observed another man approach the Mustang; this man (Richard Walbergh) was also a prosecution witness and was recognized by Bauer at the trial.

---

[1]Later testimony developed that this car, a Buick, was being driven by Eudean Amear, one of the manslaughter victims. By stipulation it was further established that the Buick subsequently swerved into the southbound lane, colliding with a southbound Pontiac occupied by two persons; one of them (William Pope) was killed, while the other (Mrs. Pope) sustained bodily injury.

Walbergh, a reserve deputy sheriff, had just gone off duty when he heard a "tremendous crash" on Pacific Coast Highway; he arrived at the scene about two minutes thereafter. Upon arrival, Walbergh saw a Mustang "approximately in the center" of the highway with its front end badly damaged. Its sole occupant was in the front (driver's) seat which had been bent backward and twisted by the impact; he was moving about and trying to get out. Walbergh observed that the driver's door was smashed and, to the best of his recollection, closed.

John Deher, a state traffic officer assigned to Malibu substation, responded to the accident call from his dispatcher. He found defendant seated on the right front seat with his legs extended out. Asked by the officer if he was injured, defendant answered in the negative. In the opinion of the officer, defendant was then under the influence of alcohol—his speech was slurred, there was a strong odor of alcohol on his breath, his eyes were extremely bloodshot and he was unable to stand without assistance. Defendant was led by Deher to the officer's patrol car and left there in the care of another officer while Deher investigated the accident further. Such investigation having been completed, the witness and defendant rode back together to the police station. Defendant was twice advised of his constitutional rights; thereafter, in response to the officer's question, defendant stated that he understood such rights. Asked, having these rights in mind, if he wanted to talk about the accident, defendant replied: "Yes, anything you want." Defendant then stated he had consumed two beers (Colt 45) at home; asked if he was driving the Mustang, defendant said, "Yes."

At the police station defendant was advised of the requirements of section 13353, Vehicle Code (chemical test for alcohol), and he chose a breathalyzer examination; it resulted in a .22 reading which indicated, to a qualified witness, that he was "definitely under the influence of alcohol" in relation to the operation of a motor vehicle. Later defendant also agreed to take a blood test at the hospital where certain minor injuries were treated; the sample of his blood was found to contain .21 percent alcohol.

Following Officer Deher's appearance on the stand, defendant moved to suppress such testimony upon the ground that he neither understood nor knowingly waived his *Miranda* rights. Defendant testified in support of this motion[2] that he had no recollection of any conversation with police officers at the times in question, and could not remember anything that happened after the accident except that a police officer helped him to the patrol car.

---

[2]There was no other defense testimony—immediately upon the close of the People's case, the defense unsuccessfully moved for a directed judgment of acquittal (Pen. Code, § 1118.1), then rested.

Defendant stated that he was then suffering from an arthritic stroke which affected his right side, arm and legs; also, that he was taking treatment for high blood pressure and diabetes. (On cross-examination, he said that the records of such treatment were at the County General Hospital.)

 As his first point, defendant claims the lack of any substantial evidence to sustain the ruling that he understood and knowingly waived his constitutional right to remain silent, although he concedes that mere intoxication (even to the extent of physical impairment) is not necessarily the equivalent of mental impairment (citing *People* v. *Stroud*, 273 Cal.App.2d 670, 679-680 [78 Cal.Rptr. 270]). We think that *Stroud* is clearly determinative of the point here urged, particularly at this stage of the proceeding. Among other things, the court held that "an appellate court viewing the totality of circumstances to ascertain whether a defendant's statements were voluntary and the product of a rational intellect, must accept the resolution of conflicting evidence by the trier of fact where the evidence upon which the lower court relied is not so improbable as to be entirely unworthy of belief. [Citations.]" (*Supra*, p. 676.) Defendant and Officer Deher were seated in the rear seat of the police car; after the officer read defendant his *Miranda* rights from a card, the latter made no response to the officer's question whether he understood such rights. The officer then reread the statement of *Miranda* rights, and defendant answered the question if he understood them in the affirmative; he then made the incriminating statements after he was asked, "Having these rights in mind, do you wish to talk to us now?" There is nothing improbable about the officer's version of what transpired—indeed he is to be commended for his professional thoroughness in providing defendant, out of an abundance of precaution, with a double opportunity to evaluate and understand his rights. In contrast, the court was confronted with defendant's asserted lack of recollection; if it chose to disbelieve his self-serving statements in that regard, the court was well within its province in doing so.

 *Stroud* is also helpful in disposing of the further claim that defendant was so intoxicated that he could not intelligently waive his *Miranda* rights. In the cited case, where defendant had an alcohol blood content of .229 milligrams, four doctors were in disagreement as to whether he could properly make the above waiver—two pro and two con. In affirming the conviction, the court stated: "But a blood alcohol content of .229, standing alone, neither proves nor disproves defendant's capacity to understand and rationalize, since there is no established statutory or decisional standard correlating blood alcohol content with cerebral impairment of which this court can take judicial notice. Consequently the import of and the inference to be drawn from an alcohol blood content of .229 must rest upon other relevant

evidence." (273 Cal.App.2d at pp. 679-680.) Such "other relevant evidence" was found in Officer Deher's testimony that while defendant seemed "confused," was unable to walk without assistance and had slurred speech, he would not have arrested him for being "plain drunk." He also testified that while his condition was such that defendant could not safely operate a motor vehicle, he otherwise knew what he was doing. From the foregoing the court could correctly conclude that defendant, while intoxicated, was still able to make an intelligent waiver of his constitutional rights.

It is next contended that the evidence failed to establish that he was driving the car and, hence, the agency causing the accident. He points out that nobody actually saw the accident occur—one witness (Walbergh) was home at that moment, while another (Bauer) lost sight of the Mustang as it rounded a curve. Similar arguments were rejected in *People* v. *Quarles,* 123 Cal.App.2d 1 [266 P.2d 68], where it was urged that the witnesses had only seen the driver's shape as the car (a Buick) went past them. The court noted, however, that three witnesses, who appeared at the scene immediately following the collision, testified that they saw no other person in or about the car: "Hence the trial court reasonably concluded that the defendant, and he alone, was the operator of the Buick at the time of the accident." (*Supra,* p. 4.) There, as here, the incriminating evidence was of a circumstantial character; at the time of *Quarles* it was, and still is, the rule that an appellate court may not interfere with the determination of the trier of fact as long as the circumstances reasonably justified the verdict. "Circumstantial evidence is like a chain which link by link binds the defendant to a tenable finding of guilt. The strength of the links is for the trier of fact, but if there has been a conviction notwithstanding a missing link it is the duty of the reviewing court to reverse the conviction." (*People* v. *Redrick,* 55 Cal.2d 282, 290 [10 Cal.Rptr. 823, 359 P.2d 255].) Here the evidence fails to indicate the existence of any missing link. (See fn. 1, *supra.*)

The foregoing disposes of all of the points urged in appellant's brief; it was filed some two weeks after *People* v. *Lobaugh,* 18 Cal.App.3d 75 [95 Cal.Rptr. 547], and no mention is made (perhaps understandably) of the determinations therein reached. It was there unanimously concluded that a person who has violated section 23101, Vehicle Code, has committed but one offense regardless of whether one or more persons have been injured thereby. Although no hearing by the Supreme Court was thereafter sought, the Attorney General challenges the soundness of the above holding, raising the same points which were rejected in *Lobaugh.* Such points, the opinion notes, include reference to the familiar rule that where a course of conduct results in multiple victims, multiple offenses are committed. (*Neal* v. *State of California,* 55 Cal.2d 11, 20 [9 Cal.Rptr. 607, 357 P.2d 839].)

█ However, as emphasized in *Lobaugh*, "The unlawful act denounced by the Vehicle Code is the 'mere act of driving a vehicle upon a public highway while intoxicated'; the act is either a misdemeanor [citation], or a felony [citation], depending on whether personal injuries result therefrom. [Citations.]" (Pp. 79-80.) As pointed out in the concurring opinion, "The question of *'bodily injury'* is only of materiality in that it aggravates the offense." (P. 84.) Also cited by the Attorney General in *Lobaugh,* as well as here, is *People* v. *Young,* 224 Cal.App.2d 420 [36 Cal.Rptr. 672], where the multiple punishment rule of *Neal* v. *State of California, supra,* was followed; but the authorities cited in *Lobaugh* were neither presented to nor considered by the court in *Young* in which case, likewise, no hearing by the Supreme Court was sought. █ Disagreeing with the analysis of hypothetical situations posed by the Attorney General in support of his position, we concur with the reasoning in *Lobaugh.* Thus we conclude under the circumstances that the defendant could only be guilty of one count of felony drunk driving.

The judgment is affirmed as to the convictions on counts II and IV (manslaughter) and count V (drunk driving) and reversed as to counts I and III (the additional drunk driving counts).

Thompson, J., and Clark, J., concurred.