Filed 5/14/15  P. v. Zarate CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　Plaintiff and Respondent,<br><br>v.<br><br>CRYSTAL JENEEN CLEVELAND ZARATE,<br><br>　Defendant and Appellant. | F068262<br><br>(Super. Ct. Nos. CRM009535, CRM014684, CRM023229, CRM026708)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County.  Ronald W. Hansen, Judge.

Michael L. Pinkerton, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Jeffrey Grant, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]　　Before Detjen, Acting P.J., Franson, J. and Peña, J.

In July 2013, a jury found appellant, Crystal Jeneen Cleveland Zarate, guilty of first degree burglary.  (Pen. Code, §§ 459, 460, subd. (a).)[1] The court also found a prior serious felony conviction of first degree burglary true under sections 667, subdivision (a)(1), and 1192.7, subdivision (c).  Appellant was sentenced to a total of seven years in state prison for this conviction--two years for the current burglary and five consecutive years for the prior serious felony conviction enhancement.

The trial court took judicial notice of the conviction and revoked probation in case Nos. CRM014684 (§ 496), CRM023229 (§ 459) and CRM009535 (a misdemeanor). Concurrent sentences were imposed for the section 496 and section 459 violations. The misdemeanor violation was dismissed.

On appeal, appellant contends that her conviction must be reversed because the trial court erroneously admitted a statement she made to police officers during her arrest into evidence.  She argues that her statement was obtained in violation of her constitutional rights under *Miranda*,[2] and, if it had been suppressed, there would have been insufficient evidence to convict her of burglary.  We affirm.

**STATEMENT OF THE FACTS**

*Testimony at Trial*

On the afternoon of March 4, 2013, appellant and her friend, Robert Womack, walked by an apartment building located on 18th Street in Modesto.[3]   Appellant noticed a San Francisco 49ers blanket hanging from the window of one apartment and told her friends that she wanted it.   The tenant of that apartment was Emily Hoshell.  Appellant and her friends gained entry through a bathroom window.

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

[3]     The evidence conflicts as to whether appellant was accompanied by one or two companions.

Shortly thereafter, Kimberly Nehring, who lived next door, saw appellant through the closed screen door of Hoshell's apartment. Nehring asked appellant if she knew the owner. Appellant replied that she did not. Nehring proceeded to call 911. Nehring also called Hoshell, who was visiting a friend at the time. Nehring further testified that she saw two other men leave the scene. Hoshell returned immediately after receiving Nehring's call.

Officer Bryan Saelee of the Merced Police Department was on patrol that day and dispatched to the apartment for a "burglary that was in progress." He arrived shortly after 2:00 p.m., where he was met by Hoshell. They both saw appellant through the screen door; she was standing in the living room. They entered the apartment together. Hoshell asked appellant who she was and what she was doing in the apartment. Officer Saelee also asked appellant for her identity. Appellant was nonresponsive. Both Officer Saelee and Hoshell testified that appellant appeared confused and under the influence of something. When Officer Saelee asked again for identification, appellant offered a letter acquired from within the apartment addressed to Hoshell, attempting to indicate to him that she was Emily Hoshell. Officer Saelee placed appellant in handcuffs and put her in his patrol car.

After appellant was placed in the car, Officer Saelee and Hoshell searched the apartment to determine how she gained entry. They discovered the screen on the bathroom window had been removed and was lying next to the toilet. They also noticed clothes and other items scattered around the apartment. Additionally, a purse containing several personal items was located in the living room near where appellant had been standing. It was later determined that some jeans were missing.

Officer Saelee transported appellant to the Merced Police Department for an interview. Roughly 30 to 40 minutes after his first encounter with appellant at the apartment, Officer Saelee issued a *Miranda* warning and began questioning appellant. Officer Saelee read from a card advising appellant of her rights, to which appellant

3.

acknowledged her understanding by responding "Yes" to each warning. He then asked if she wanted to make a statement, and she said she did. Officer Saelee questioned her about the events and appellant confessed to entering the apartment because she wanted a 49ers blanket she saw through the apartment window.

Officer Saelee testified that throughout the interview at the police department, including during the *Miranda* warning, appellant appeared coherent and no longer under the influence. The interview was not recorded and there is no other documentation indicating that appellant waived her *Miranda* rights.

### *Motion to Exclude Evidence*

At trial, defense counsel filed an in limine motion requesting a hearing under Evidence Code section 402 to determine whether appellant's statements to Officer Saelee were admissible. The section 402 hearing was held, and Officer Saelee was the only witness.

Officer Saelee testified that he was dispatched to Hoshell's apartment on March 4, 2013, around 2:00 p.m. He and Hoshell found appellant in the apartment when they entered. Appellant said she had permission to be in the apartment, and when asked who she was, she told him she was Emily Hoshell. Officer Saelee stated that appellant appeared to be confused and under the influence of a substance. He testified that he had to repeat his questions to her and, at times, she was nonresponsive. Officer Saelee handcuffed appellant and put her in the police car. After conducting further investigation of the scene, Officer Saelee took appellant to the police station.

Approximately 30 to 40 minutes after Officer Saelee first arrived at the apartment, appellant was placed in the station's interview room. A man named Michael Eyring, who had been detained by another officer in connection with the apartment incident, was brought into the room. When asked if Eyring was involved, appellant did not implicate him and he was released. Then, Officer Saelee read *Miranda* rights to appellant from a police department-issued card. When asked if she understood each right, appellant

4.

responded "yes."  Officer Saelee then asked appellant if she wanted to talk about what happened and she said "yes."  Appellant then made incriminating statements. She said that she and Womack saw a 49ers blanket hanging form Hoshell's apartment window and she told Womack that she wanted it.  She confessed that they broke into the apartment through a bathroom window and entered the residence.

Officer Saelee testified that the entire interview lasted between five to 10 minutes.  Additionally, he stated that the appellant appeared coherent throughout the questioning.  She no longer showed signs of confusion or intoxication, he did not need to repeat his questions to her, and she appeared to know where she was.  Appellant's statements were not recorded.

Following Officer Saelee's testimony, the trial court heard argument regarding the admissibility of appellant's statements as follows, in relevant part:

> "[DEFENSE COUNSEL]: … I raise the issue of voluntariness in my motions in limine, is the Court finding that the statements were made voluntary [*sic*]?  The testimony is that she's confused, disoriented, doesn't seem to understand what's going on.  I think a voluntary statement requires the ability to exercise a free rational choice.

> "THE COURT: That was her initial—there was initial confusion but there was no testimony of any confusion in the police department interview.

> "[DEFENSE COUNSEL]: I agree.

> "THE COURT:  And it was at least, at least 40 minutes later.  And so, okay, I do find that there was a knowing and voluntary waiver of her [*Miranda*] rights and that the statements elicited in the interview were voluntarily made."

Appellant's statements to Officer Saelee at the police station were admitted.

## DISCUSSION

### Standard of Review

The standard of review for a denial of a motion to suppress a confession under *Miranda* is independent, or de novo, review "insofar as the trial court's underlying

decision entails a measurement of the facts against the law." (*People v. Waidla* (2000) 22 Cal.4th 690, 730.) On appeal, the burden of proof shifts to the defendant to establish that she did not competently and intelligently waive her *Miranda* rights. (*People v. Duren* (1973) 9 Cal.3d 218, 237 [burden is on the prosecution at trial].) The court must accept the trial court's resolution of disputed facts as well as the credibility of witnesses where supported by substantial evidence. (*People v. Cruz* (2008) 44 Cal.4th 636, 667; see also *People v. Whitson* (1998) 17 Cal.4th 229, 248 (*Whitson*).) The issue is resolved based on the totality of the circumstances. (*North Carolina v. Butler* (1979) 441 U.S. 369, 374-375 (*Butler*); *Moran v. Burbine* (1986) 475 U.S. 412, 421 (*Moran*).)

*Applicable Law and Analysis*

It is well established under *Miranda* that a suspect cannot be subjected to a custodial interrogation unless he or she knowingly and intelligently waived the right to remain silent and to the presence of an attorney. (*People v. Rios* (2009) 179 Cal.App.4th 491, 499 (*Rios*).) Statements obtained in violation of this rule are generally inadmissible in criminal trials. (*Ibid*.) Once a defendant has been properly given a *Miranda* warning, those rights can be waived "provided the waiver is made voluntarily, knowingly, and intelligently." (5 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Criminal Trial, § 157, p. 271.)

In order to determine whether a defendant voluntarily, knowingly, and intelligently waived his or her *Miranda* rights, the court must consider two distinct components: "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." (*Moran*, *supra*, 475 U.S. at p. 421.) The question of waiver is made by considering the facts and circumstances of the case, "'including the background, experience, and conduct of the accused.'" (*Butler*, *supra*, 441 U.S. at pp. 374-375.) If the totality of the

circumstances indicate both an uncoerced choice and the requisite level of comprehension, then a court may properly conclude that *Miranda* rights were waived. (*Moran*, *supra*, at p. 421.)

With these principles in mind, we consider the evidence and the trial court's ruling in this case. On the question of voluntariness, the record is devoid of any indication that police resorted to improper psychological or physical pressures to elicit statements from appellant. (See *Whitson*, *supra*, 17 Cal.4th at pp. 248-249.) There is also no evidence that she was worn down by interrogation tactics or lengthy questioning. (*Id.* at p. 249.) On the contrary, appellant's willingness to speak with Officer Saelee is readily apparent: after being read her *Miranda* rights, appellant expressed her willingness to explain what happened. She made incriminating statements and the totality of the interview lasted 10 minutes, at most.

Appellant suggests that the lack of a tape recording or a signed waiver form, which could have memorialized her statements, are indicative of either police misconduct or insufficient evidence of a valid waiver. She relies on *People v. Beagle* (1972) 6 Cal.3d 441 (abrogated on other grounds in *People v. Diaz* (2015) 60 Cal.4th 1176), which states that "evidence of oral admissions must be viewed with caution." (*Id.* at p. 455 [holding that trial court's failure to give jury instruction to regard defendant's unrecorded statements with caution was harmless error].) However, both the U.S. Supreme Court and California courts have stated that it is not necessary for *Miranda* warnings or waivers to be recorded or contemporaneously memorialized to be valid. (5 Witkin & Epstein, *supra*, Criminal Trial, § 157 at p. 272; see *Butler*, *supra*, 441 U.S. at p. 373 ["express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of validity of that waiver, but it is not inevitably either necessary or sufficient to establish waiver."]; *People v. Johnson* (1969) 70 Cal.2d 541, 558 (*Johnson*), disapproved on another point in *People v. DeVaughn* (1977) 18 Cal.3d 889, 899, fn. 8 ["Once the defendant has been informed of his rights, and indicates that he

7.

understands those rights, it would seem that his choosing to speak and not requesting a lawyer is sufficient evidence that he knows his rights and chooses not to express them."]; *Rios*, *supra*, 179 Cal.App.4th at p. 499 ["there is no requirement that an in custody accused expressly waive the right to counsel and silence after being advised of those rights."].)

Although appellant's confession was not memorialized by a recording or a signed waiver, the uncontroverted evidence from Officer Saelee's testimony shows that she was informed of her rights and acknowledged that she understood them. Her decision to speak is sufficient evidence that she knew her rights and chose not to exercise them. (See *Johnson*, *supra*, 70 Cal.2d at p. 558.) A recording or other corroborating evidence is simply not required under *Miranda*. (See *People v. Cooper* (1970) 10 Cal.App.3d 96, 108.)

We next turn to the second component of the analysis, focusing on whether appellant was aware of the rights she was abandoning and the consequences of that decision.

Appellant argues that her statements could not have been made knowingly and intelligently because the 30-40 minute time lapse between her confused state at the apartment and subsequent clarity during the interrogation at the police station was too short to support a conclusion that she was capable of waiving her rights. However, the ability to knowingly and intelligently waive *Miranda* rights is analyzed at the time of police interrogation, not before. (See *Whitson*, *supra*, 17 Cal.4th at p. 249 ["there was no direct evidence that *during* any of [the defendant's] interviews with police, his judgment was clouded ...."].) Moreover, the fact that a suspect is under the influence of some substance or suffers from mental deficiencies "is irrelevant if the suspect's statement was 'the product of a rational intellect and free will.'" (*Shackleford v. Hubbard* (9th Cir. 2000) 234 F.3d 1072, 1080; see also *U.S. v. Conn* (9th Cir. 2014) 577 Fed.Appx. 724, 726.) Indeed, numerous cases have upheld a *Miranda* waiver where the suspect could

coherently respond to police interrogation despite intoxication or mental deficiencies. (See, e.g., *Shackleford*, *supra*, at pp. 1080-1081 [failure of counsel to present evidence of defendant's drug use and mental deficiencies would not have shown a reasonable probability that his *Miranda* waiver was invalid.]; *Whitson*, *supra*, 17 Cal.4th at pp. 238, 249 [although seriously injured, receiving hospital treatment for injuries, and possessing low intelligence, there was no direct evidence that defendant did not knowingly and intelligently waive his rights.]; *People v. Moore* (1971) 20 Cal.App.3d 444, 449-450 [defendant had a blood-alcohol content of .22 but was still able to knowingly and intelligently waive his rights].) Any inference to be drawn from evidence of intoxication or mental deficiency is based on other relevant evidence. (See *Moore, supra,* at p. 449, quoting *People v. Stroud* (1969) 273 Cal.App.2d 670, 679-680.)

The fact that appellant appeared confused at the apartment is irrelevant to her ability to knowingly and intelligently waive her rights when questioned at the police station. There is no evidence that her mind was clouded during her interview with Officer Saelee, 40 minutes after their initial encounter at the apartment. When asked if she understood her *Miranda* rights she responded "yes" to each question posed. Appellant was able to name Womack as a participant in breaking into the apartment and also indicated that Eyring was not involved. She was able to describe her own participation in the apartment entry, as well as offer a reason for entering the apartment. Appellant's answers were clear and responsive with no need for Officer Saelee to repeat himself, as had been the case at the apartment. She appeared to be coherent with no indication of confusion. Finally, there was no evidence presented at trial to contest Officer Saelee's testimony that appellant was coherent during the *Miranda* interrogation.

In light of the foregoing evidence, we conclude that the record supports the trial court's conclusion that appellant voluntarily and knowingly waived her Fifth Amendment rights.

## DISPOSITION

The judgment is affirmed.