STATE of Alaska, Appellant,

v.

Dennis GARCIA, Appellee.

No. A–1737.

Court of Appeals of Alaska.

April 1, 1988.

Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellant.

Michael L. Wolverton, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Dennis Garcia was indicted for misconduct involving a controlled substance in the third degree. AS 11.71.-030(a)(1). Garcia moved to suppress all statements made and all evidence seized from him by the police at the Anchorage airport on October 2, 1985. Judge Michael N. White granted the motion to suppress and dismissed the indictment. The state has appealed.[1]

On the evening of October 2, 1985, Garcia arrived in Anchorage on a United Airlines flight from San Francisco and Seattle. State Trooper Sergeant James Grimes and Trooper Alan Storey were watching the passengers entering the terminal from this flight. They were looking for possible drug couriers. The troopers observed Garcia deplane. They believed he was between the fifth and tenth passenger to do so. The troopers noticed Garcia because he "appeared to be possibly Latin or Albanian or some nationality that was of the complexion that made us take note of his nationality," and because he was "very intent" and "businesslike." Garcia was carrying a brown leather satchel. He also had two or three days' growth of beard.

The troopers followed Garcia along the concourse toward the main terminal. Garcia walked faster than the other passengers. He went down the stairs into the baggage claim area. Garcia walked past the United Airlines baggage carousel to the Alaska Airlines carousel area. Once there, he turned his back toward the railing and scanned the crowd in a way which Grimes thought reflected a fear of being followed.

Garcia then walked to the MarkAir carousel, which had no baggage or other people in the vicinity. He put his satchel on the floor, put his foot on top of it, and looked at the carousel for forty-five to sixty seconds. Garcia then picked up his satchel and proceeded to the Western Airlines carousel. He proceeded quickly to the United Airlines carousel, where he picked up a brown suitcase and headed for the exit. Grimes concluded that Garcia had bypassed the United baggage carousel intentionally since his other actions indicated that he was familiar with the airport.

At this point, after he had already decided to detain Garcia's bags for a canine scent detection check, Grimes contacted Garcia. Grimes approached Garcia, showed his police identification, and asked to speak to Garcia. Garcia replied, "sure." Grimes told Garcia, "You're not under arrest, and you're not in trouble or anything and you can actually leave if you want to." Garcia asked, "First, what's this all about?" Grimes told him he was conducting a drug investigation. Grimes claims that at this time, Garcia became perceptively nervous. Grimes asked Garcia for identification and claimed that Garcia's hand was shaking as he handed his driver's license to Grimes. Grimes also noticed sweat on Garcia's brow.

Garcia produced a valid Washington driver's license. Grimes asked for Garcia's airline ticket, but Garcia said he had thrown it away on the plane. Grimes asked Garcia if he had come to Anchorage for a visit or for business. Garcia said he had come to visit a friend and added that he was going to a foosball tournament in Reno in a couple of days.

Grimes asked Garcia if he had any drugs in his suitcase. Garcia answered, "No. In fact, I'm going to leave." As Garcia attempted to leave, Grimes said, "Mr. Garcia, just a moment please." Garcia asked,

---

1. The actual decision being appealed is Judge White's decision granting the motion to suppress. The correct remedy upon granting Garcia's motion below should have been suppression of evidence rather than dismissal of the indictment. The state has no right to appeal a trial court order suppressing evidence in a criminal case. It is obligated, instead, to proceed by petition for review. *Kott v. State,* 678 P.2d 386, 390–91 (Alaska 1984). The entry of an order of dismissal in lieu of an order suppressing evidence cannot, in our view, confer upon the state the right to appeal. Garcia, however, has raised no procedural objection to the state's appeal, and the issues presented are of sufficient significance to warrant discretionary review. Accordingly, we have proceeded to decide the merits of the case. *See State v. Price,* 715 P.2d 1183, 1186 (Alaska App.1986).

"Why me?" Grimes told Garcia, "I watched you walk the length of the terminal looking all around and you're awful nervous." Garcia said, "No, I didn't."

Grimes asked for permission to search Garcia's bags. Garcia denied him permission and said again that he was leaving. At that point, Grimes informed Garcia that he was going to detain Garcia's bags. Garcia then opened his bags and hurriedly shifted the contents inside them.

After Grimes had detained Garcia's bags, he noticed that the suitcase bore a name other than Garcia's. Trooper Bowman then left the area and returned with the scent detection dog. Garcia initially attempted to block the dog's approach to his bags. The bags were then moved. The dog first alerted to the carry-on satchel by burying his nose in the opening created by a broken zipper, and by actually chewing and gnawing in the bag. The dog also alerted to the suitcase.

The troopers then took custody of both bags and allowed Garcia to leave. The troopers obtained search warrants for both bags. The satchel was found to contain 840 grams of cocaine and two ounces of marijuana. In the suitcase, there was only an insignificant residue of controlled substances.

■ This case turns on whether the police had sufficient information to perform an investigative stop. Police are authorized to perform an investigative stop where they have reasonable suspicion that imminent public danger exists or that serious harm to persons or property has recently occurred. *Coleman v. State*, 553 P.2d 40, 46 (Alaska 1976). When the police reasonably suspect that someone is a drug courier presently engaged in transporting drugs, imminent public danger exists for purposes of the *Coleman* standard. *Pooley v. State*, 705 P.2d 1293, 1307 (Alaska App.1985).

■ Not every contact between a police officer and a private citizen rises to the level of an investigative stop. Police may direct questions to private citizens if their behavior was not " 'conduct which a reasonable man would view as threatening or offensive even if coming from another private citizen.' " *Waring v. State*, 670 P.2d 357, 364 (Alaska 1983) (quoting 3 W. La-Fave, *Search and Seizure* § 9.2 at 53–54 (1978)). A mere request for identification does not automatically turn the encounter into a *Coleman* stop as long as the identification was not retained for an unnecessarily long time. *Pooley*, 705 P.2d at 1306. The officer may continue to ask questions if the officer's suspicions are not satisfied by the answers the officer receives. *Id.*

■ A person is seized only if a reasonable person in his or her position would not feel free to leave. *Waring*, 670 P.2d at 364; *Pooley*, 705 P.2d at 1305. At the point where the person is seized, the seizure must be justified by at least reasonable suspicion under the *Coleman* standard. The exposure of luggage to a dog trained to detect drugs is a search. Because the search is minimally intrusive, however, the police may conduct this type of search when they have a reasonable suspicion that drugs are present in the containers and that the drugs are being illegally imported into the state or are being illegally possessed for distribution. *Pooley*, 705 P.2d at 1311.

■ Whether reasonable suspicion exists is a mixed question of fact and law. The trial court's findings of historical fact should be overturned only if clearly erroneous. *Pooley*, 705 P.2d at 1305. Whether the facts of the case justify reasonable suspicion is subject to *de novo* review. *United States v. Erwin*, 803 F.2d 1505, 1509–10 (9th Cir.1986). In the instant case, however, Judge White made no finding as to exactly when the seizure occurred.

Trooper Grimes could approach Garcia in the manner that he did, ask questions, and even ask for identification. By the time that Garcia had indicated that he was leaving, however, and Trooper Grimes announced that he was going to detain Garcia's bags, the trooper was required to have reasonable suspicion that there were drugs present in those bags. We conclude that Judge White did not err in concluding

that Trooper Grimes had no reasonable suspicion at that time.

Judge White made the following findings of fact:

[A]t the time of the seizure of the defendant's luggage, the officers had the following information which they considered suspicious:

1. The suspect was among the first ten passengers getting off the plane;

2. The suspect was of Latin or Albanian descent;

3. The suspect looked "intent," "business-like," and "seedy";

4. The suspect looked both ways when getting off the plane;

5. The suspect walked quickly to the baggage claim area;

6. The suspect walked around the baggage claim area and looked around (the baggage had not yet started coming out of the carousels);

7. When contacted by the police, the suspect appeared to be nervous. (This was after the police asked him for identification and informed him that they were involved in a drug investigation);

8. The suspect was unable to produce an airline ticket for the flight he had been on;

9. The name on the luggage was different from that on the suspect's driver's license; and

10. The suspect's driver's license was believed to contain the suspect's correct name and address.

The state argues that these findings were clearly erroneous because they overlooked substantial evidence and significantly understated the significance of what the troopers had observed. In particular, the state argues that factors 6, 7, and 8 understate Grimes' observations of Garcia's behavior. Factor 6 describes Garcia's actions at the baggage carousels. The state argues that it does not accurately reflect Grimes' testimony. We find that although the factor does not include the inference that Garcia was scanning the crowd in a manner which indicated a fear of being followed, it does accurately and fully reflect Grimes' testimony.

The state next argues that factor 7 was clearly erroneous because it described Garcia as merely "nervous," not taking into account his extreme and unusual nervousness when contacted by the police. Although Judge White's finding did not go as far as Grimes' testimony, it is not required that the trial judge totally accept the testimony of a witness. In this case he partially accepted Grimes' testimony. Inasmuch as the only evidence presented was that of Grimes, and Judge White did not find that Garcia was "unusually" nervous, this finding was not clearly erroneous. Judge White seems to have concluded that many people confronted by the police conducting a drug investigation would be nervous. This seems reasonable.

The state also argues that Judge White ignored other factors that would lead to a reasonable suspicion. When asked why he was in Anchorage, Garcia replied that he had come to visit a friend for a couple of days on his way to Reno for a foosball tournament. He had flown to Anchorage from Washington state. Grimes testified that this "kind of confused me." He never testified, however, that this caused him to be suspicious. Therefore, Judge White's failure to make a finding regarding Garcia's explanation, was not clearly erroneous.

The state further argues that Judge White erroneously failed to find that the troopers had reason to be suspicious because Garcia made a statement which Grimes knew to be untrue. Garcia claimed that he had *not* walked the length of the terminal. Grimes, however, only testified that Garcia "had traversed *almost* the whole length of the terminal." Therefore, Garcia's statement was not strictly false, and Judge White did not clearly err in finding this was not a factor which might arouse reasonable suspicion. Moreover, Judge White could have found that Garcia had been seized by the time that he made this statement. In such an instance, the statement should not be considered.

The state finally argues that factor 8 was clearly erroneous because it did not fully explain why Garcia's inability to produce his airline ticket was suspicious. The state claims it is suspicious that Garcia would throw away his ticket if he was not yet on the final leg of his journey. Other explanations, however, are possible. For instance, Garcia might not yet have purchased his ticket for that leg of the trip.

The state concedes that factor 9 was clearly erroneous. Grimes testified that he did not notice the different name on the luggage until after he had detained the luggage. This information therefore should not have been considered in determining whether Grimes had sufficient information to seize the luggage.[2] Furthermore, Factor 10 would not tend to establish reasonable suspicion. If anything, Garcia's production of valid identification would tend to decrease suspicion of criminal activity.

In view of all these factors, it appears that Garcia's actions were suspicious to some degree. In resolving these cases, however, it is important to make sure that the circumstances relied upon do not "describe a very large category of presumably innocent travelers, who would be subject to virtually random seizures...." *Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980). Although Garcia's movement through the airport, his scanning the crowd, his nervousness, his inability to produce a ticket, and his explanation of his travel plans were somewhat suspicious, we do not believe that Judge White was required to find that those activities rose to a level of reasonable suspicion sufficient to allow the police to detain Garcia or his luggage. The troopers' observations would appear to apply to a large number of innocent travelers.

The judgment of the trial court is AFFIRMED.[3]

---

**2.** Use of an alias as well as evasive actions can be "a legitimate indicator of criminal activity." *United States v. Sokolow*, 831 F.2d 1413, 1423 (9th Cir.1987), *petition for cert. filed*, 56 U.S.L.W. 3542 (U.S. Feb. 2, 1988) (No. 87–1295).

**3.** Following the trial court's decision, the state filed a motion to reconsider, offering an affidavit from Trooper Storey which added information beyond that which he had testified to at the evidentiary hearing. Under the appellate rules, however, Judge White had no jurisdiction to consider the appeal. Therefore, pursuant to Alaska Appellate Rule 203, Judge White denied the motion. The state concedes that this ruling was proper. It claims, however, that it only filed its appeal because former Appellate Rule 204(a)(4) did not toll the time for appeal upon the filing of a timely motion for reconsideration. Yet, in denying the motion, Judge White indicated that the motion to reconsider appeared to be an attempt to present new material and also was untimely.

Upon affirmance of the trial court, the state asks this court to remand for reconsideration in light of Supreme Court Order No. 794, amending Appellate Rule 204(a)(4). The amendment tolls the time for appeal after a timely motion for reconsideration has been filed. The amendment became effective March 15, 1987. We decline to do so. The state had a full and fair opportunity to present its case to Judge White.