Dale M. GUNDERSEN, Petitioner,

v.

**MUNICIPALITY OF ANCHORAGE, Respondent.**

No. S–3219.

Supreme Court of Alaska.

June 15, 1990.

Rehearing Denied July 30, 1990.

William Grant Callow, Anchorage, for petitioner.

Elaine Vondrasek, Asst. Mun. Prosecutor, and Richard D. Kibby, Mun. Atty., Anchorage, for respondent.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

MOORE, Justice.

This case involves the scope of a person's due process right to challenge the result of a breath test that the police administer after the person is arrested for driving while intoxicated. We have held that in order to introduce the result of the police-administered breath test in evidence, due process requires that the state preserve a sample of the defendant's breath for independent testing. The issue in this case is whether the state may satisfy a defendant's due process rights without preserving his breath sample if it provides notice

of his right to an independent test and offers assistance in obtaining one. The defendant, Dale M. Gundersen, claims that the results of his breath test should have been suppressed because the notice and offer of assistance he received was constitutionally deficient. The court of appeals disagreed and affirmed his conviction. We affirm.

The essential facts of this case are not in dispute.[1] On September 10, 1986, Gundersen was arrested for driving while intoxicated in violation of Anchorage Municipal Code ("AMC") 9.28.020. At the police station, Officer David Koch of the Anchorage Police Department administered a chemical test of Gundersen's breath using the Intoximeter 3000 machine. The Intoximeter test registered a reading of .264 grams of alcohol per 210 liters of breath. No sample of Gundersen's breath was taken or preserved. After Gundersen took the Intoximeter test, Koch read him the following "Notice of Right to an Independent Test":

> You are ... under arrest for the offense of driving while intoxicated. You have provided a sample of your breath for analysis on the Intoximeter 3000. You also have a right to obtain an independent test of your blood alcohol level. If you wish to have an independent test you will be transferred to a local medical facility where a sample of your blood will be drawn by qualified personnel at no charge to you. The blood sample will be stored at the medical facility for a period of 60 days. It will be your responsibility to make arrangements for analysis of your blood sample. The analysis itself will be done at your own expense. At this time you must decide whether or not you want an independent test performed. A refusal to decide will be taken [as] a waiver of your right to obtain an independent test.

Gundersen told Koch: "I do not want to receive the blood test" and checked the appropriate box on the notice form.

Gundersen moved to suppress the results of the Intoximeter test. The district court denied the motion. At trial, the Intoximeter test result was admitted in evidence. Gundersen was convicted of driving while intoxicated in violation of AMC 9.28.020.

Gundersen appealed the conviction to the court of appeals contending that the trial court erred in refusing to suppress the results of his Intoximeter test. Gundersen argued, in part, that the Intoximeter results should have been suppressed because the form notice that Officer Koch read to him was inadequate to satisfy both his due process right to challenge the Intoximeter results and his statutory right to an independent test under AMC 9.28.023(E). In *Gundersen v. Municipality of Anchorage*, 762 P.2d 104 (Alaska App.1988), the court of appeals rejected these and other arguments and affirmed Gundersen's conviction.[2] We granted Gundersen's petition for hearing to clarify the source and the scope of a defendant's due process right to challenge the result of a police-administered breath test. Gundersen does not appeal the court of appeals' rejection of his claim that the form notice violated his statutory right to an independent test under AMC 9.28.023(E). We express no opinion on this issue.[3]

■ We first recognized a due process right to challenge the result of a police-administered breath test in *Lauderdale v. State*, 548 P.2d 376 (Alaska 1976). We held that due process requires that in order to introduce the breath test result, the police must give the defendant a reasonable opportunity to challenge the test result. We concluded that the police denied Lauderdale due process by failing to preserve a sample of his breath for independent testing:

*Municipality of Anchorage,* 769 P.2d 436 (Alaska App.1989).

**1.** In his petition for hearing, Gundersen stipulated to the court of appeals' statement of the facts of the case. *See Gundersen v. Municipality of Anchorage,* 762 P.2d 104, 107 (Alaska App. 1988).

**2.** The court of appeals subsequently denied Gundersen's petition for rehearing. *Gundersen v.*

**3.** With respect to Gundersen's other points on appeal, the petition for hearing was improvidently granted.

Lauderdale is asking for the opportunity to test the reliability or credibility of the results of the breathalyzer test. He wishes to do this by a scientific analysis of some of the components of the breathalyzer machine, that is, the ampoules, which we have held may well yield scientifically reliable data bearing on his innocence or guilt of the crime with which he is charged. A denial of the right to make such analysis, that is to say, to "cross-examine" the results of the test, would be reversible error without any need for a showing of prejudice. It would be denial of a right to a fair trial, and a fair trial is essential to affording an accused due process of law.

548 P.2d at 381 (footnotes omitted). In holding that due process requires the police to preserve breath samples, we did not indicate whether we were interpreting the due process clause of the fourteenth amendment of the Federal Constitution or the due process clause of the Alaska Constitution.

The constitutional source of the holding is significant in light of the United States Supreme Court's decision in *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). In *Trombetta*, the Court held "that the Due Process Clause of the Fourteenth Amendment does not require that law enforcement agencies preserve breath samples in order to introduce breath-analysis tests at trial." 467 U.S. at 491, 104 S.Ct. at 2535. The Court reasoned that a breath sample failed to meet the standard of constitutional materiality set forth in *United States v. Agurs*, 427 U.S. 97, 109–19, 96 S.Ct. 2392, 2400–05, 49 L.Ed.2d 342 (1976): "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." 467 U.S. at 489, 104 S.Ct. at 2534. The Court first concluded that "the chances

are extremely low that preserved samples would have been exculpatory." *Id.* The Court considered that the high accuracy of the Intoxilyzer[4] would mean that a preserved breath sample would simply confirm the original test result "[i]n all but a tiny fraction of cases." *Id.* Second, even assuming that the breath sample was exculpatory, the Court found that there were readily available alternative means of demonstrating innocence. The three ways the Intoxilyzer might malfunction, faulty calibration, extraneous interference with machine measurements, and operator error, all can be proven without resort to breath samples. For example, a defendant may inspect the machine for faulty calibration, introduce evidence of factors interfering with the proper operation of the machine, and cross-examine the police officer who administered the test in order to raise doubts about whether the test was properly administered. 467 U.S. at 490, 104 S.Ct. at 2534–35. At the same time, the Court recognized that "[s]tate courts and legislatures, of course, remain free to adopt more rigorous safeguards governing the admissibility of scientific evidence than those imposed by the Federal Constitution." 467 U.S. at 491 n. 12, 104 S.Ct. at 2535 n. 12 (citing *Lauderdale v. State*, 548 P.2d 376 (Alaska 1976)).

Today, we reaffirm our holding in *Lauderdale* under the due process clause of the Alaska Constitution. A positive Intoximeter test result is the single most important piece of evidence against a defendant accused of driving while intoxicated. We recognize that the Intoximeter is ordinarily an accurate machine and that there are alternative methods of challenging the test result such as cross-examining the operator and inspecting the machine. However, we do not believe these opportunities to challenge the test result are necessarily sufficient given the state's coercive power to subject a person arrested for driving while

---

**4.** The Omicron Intoxilyzer which was used to test Trombetta's breath is an infrared detection device operating on the same principle as the Intoximeter 3000 used by the Anchorage police. The primary difference between the machines is

that the Intoximeter 3000 incorporates a computer making its operation more automatic. 2 R. Erwin, *Defense of Drunk Driving Cases* § 19.03 at 19–47 (3d ed. 1989).

intoxicated to the Intoximeter test under the implied consent statute.[5] Since a defendant must provide the state with potentially incriminating evidence at the risk of criminal penalties, we hold that due process requires that the defendant be given an opportunity to challenge the reliability of that evidence in the simplest and most effective way possible, that is, an independent test.[6]

Gundersen argues that since the state failed to preserve a breath sample, his Intoximeter test result should have been suppressed. The Municipality counters that its notice and offer of assistance is a constitutionally adequate substitute for preserving breath samples under the court of appeals' decision in *Municipality of Anchorage v. Serrano*, 649 P.2d 256 (Alaska App.1982). In *Serrano*, the court addressed the issue whether due process permits the state to introduce Intoximeter evidence if the police did not preserve a sample of the defendant's breath at the time of testing. The court concluded that "due process does require the state and the municipality to take reasonable steps to attempt to preserve breath samples for defendants for their independent analysis *or to provide some other alternative check of the breathalyzer results.*" 649 P.2d at 259 (emphasis added). The court explained that "effective compliance" with AS 28.35.-033(e) which establishes a defendant's right to an independent test would be one permissible alternative to preserving breath samples: [7]

We believe that effective compliance with AS 28.35.033(e) would constitute an acceptable alternative to routine preservation of breath samples. In order to establish effective compliance with AS 28.35.033(e), however, we believe that the prosecution would, at a minimum, have to show the following: (1) that the officer who administered the breathalyzer test clearly and expressly informed the defendant of his right to secure an independent test under AS 28.35.033(e); (2) that if the defendant requested an independent test, the officer ... made reasonable and good-faith efforts to assist the defendant in obtaining access to a person qualified to perform an independent examination; and (3) that persons qualified to conduct independent tests or to preserve blood or breath samples for the purpose of conducting independent tests were in fact available in the area

---

5. AS 28.35.031; AMC 9.28.021. Under AS 28.-35.031 and the corresponding municipal ordinance, AMC 9.28.021, a person arrested for driving while intoxicated is deemed to have consented to an Intoximeter test. The state has no duty to advise him that he has a right to refuse to take the test. *Wirz v. State*, 577 P.2d 227, 230 (Alaska 1978). If the arrested driver refuses to take the test, his driver's license may be revoked and he is subject to criminal penalties. AS 28.35.031(e); AS 28.35.032.

6. In *Lauderdale*, the precise issue presented was whether the police violated due process by failing to preserve a breath sample that it already had collected. In this case, the police did not collect a breath sample at all. Although in most cases a duty to collect evidence imposes a more substantial burden on law enforcement than a duty to preserve evidence already collected, the distinction is trivial in light of the technology of the Intoximeter test. The failure of the police to collect a breath sample in the first instance is simply a policy choice. *See Garcia v. District Court*, 197 Colo. 38, 589 P.2d 924, 929–30 (1979). In this case, to hold that due process is violated only if the police fail to preserve a breath sample already collected would allow the state to

circumvent a defendant's right to challenge the breath test result simply by choosing not to collect a breath sample. Therefore, we clarify our holding in *Lauderdale* that the right to challenge a police-administered breath test is violated if the police fail to collect and preserve a breath sample or otherwise provide a reasonable opportunity to obtain an independent test as discussed below.

7. AS 28.35.033(e) provides:
The person tested may have a physician, or a qualified technician, chemist, registered nurse or other qualified person of the person's own choosing administer a chemical test in addition to the test administered at the direction of a law enforcement officer. The failure or inability to obtain an additional test by a person does not preclude the admission of evidence relating to the test taken at the direction of a law enforcement officer; the fact that the person under arrest sought to obtain such an additional test, and failed or was unable to do so, is likewise admissible in evidence.

where the breathalyzer test was administered.

649 P.2d at 258 n. 5.

We agree with the *Serrano* court that clear and express notice of a defendant's statutory right to an independent test under these conditions satisfies the requirements of due process. In *Lauderdale*, we held that the state violated Lauderdale's due process rights by failing to preserve a breath sample because he was denied a reasonable opportunity to obtain an independent test to challenge the result of the police-administered test. However, it is not necessary to preserve a breath sample in order to provide a defendant with a reasonable opportunity to obtain an independent test. While the state may provide this opportunity by preserving the defendant's breath sample for later independent testing, it also may provide this opportunity by notifying a defendant of his right to an independent test and assisting the defendant in obtaining one.

We recognize that a person may waive his constitutional right to challenge the Intoximeter test if he has to choose to exercise that right while in police custody. No such choice is necessary if the breath sample is preserved for later testing. However, we do not believe that having to make a choice while in police custody so diminishes the value of the notice of the right to an independent test that it makes it an unreasonable opportunity to challenge the accuracy of the Intoximeter test result. We agree with the court of appeals that if the police choose not to preserve a breath sample, due process requires that they give clear and express notice of a defendant's right to an independent test and offer assistance in obtaining one in order to introduce police-administered test results at trial.[8]

A defendant's waiver of this due process right essential to a fair trial is valid only if it is knowingly and intelligently made. *See Thessen v. State*, 454 P.2d 341, 343 (Alaska

1969); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 235–241, 93 S.Ct. 2041, 2041–55, 36 L.Ed.2d 854 (1973) (knowing and intelligent waiver standard applied to those rights guaranteed to a criminal defendant to preserve a fair trial). Justice Burke correctly observes that "an accused may be intoxicated to such an extent that a knowing and intelligent waiver [of his due process right] is precluded." *Infra* p. 678. Justice Burke concludes that since a person charged with driving while intoxicated frequently will be intoxicated, "the probability of an involuntary waiver of the accused's due process rights is high." *Id.* Thus, Justice Burke would adopt a prophylactic rule requiring the state to preserve an accused's breath sample to protect his due process rights. *Id.*

We do not believe such a prophylactic rule is necessary. We have held that a defendant's waiver of his due process rights is effective despite his intoxication so long as "he knew what he was doing." *Thessen*, 454 P.2d at 345; *see also People v. Moore*, 20 Cal.App.3d 444, 97 Cal.Rptr. 601, 603–04 (1971); *State v. Pease*, 129 Vt. 70, 271 A.2d 835, 838 (1970). Although Gundersen does not allege that his waiver was invalid because he was intoxicated, we observe that Gundersen's insightful questions to the arresting officer concerning the accuracy of the Intoximeter test indicate that he knew what he was doing. *See Gundersen*, 762 P.2d at 107. A defendant's ability to challenge the introduction of Intoximeter evidence on the ground that he was so intoxicated that he did not know what he was doing adequately protects his due process right to challenge the Intoximeter test.

■ Gundersen challenges the adequacy of the form notice under the due process clause of the Alaska Constitution on the ground that it did not inform him of the full scope of his statutory right under AMC 9.28.023(E) to obtain an independent test of his own choosing performed by a physician

---

**8.** In *Palmer v. State*, 604 P.2d 1106 (Alaska 1979), we held that advice of a person's statutory right to an independent test is not "required by any provision of the state or federal constitution." 604 P.2d at 1110. We modify that statement to the extent that it is inconsistent with our holding in this case.

of his own choosing.[9] The police offered Gundersen only a blood test and implied that it would be administered at a facility chosen by the police. Gundersen argues that this notice violated his due process right to a reasonable opportunity to challenge the accuracy of the Intoximeter test result because he was neither given a choice of independent tests nor a choice of medical facilities.

We conclude that the notice read to Gundersen satisfied due process. First, we agree with the court of appeals that the drawing of blood is not "so intrusive a procedure as to be an unreasonable alternative *per se.*" 762 P.2d at 112. Therefore, that Gundersen was not given his choice of reasonable tests did not deny him his due process right to a reasonable opportunity to obtain an independent test. Similarly, without any allegation that the police-selected facility would not administer a reliable test, that Gundersen was not given his choice of reasonable facilities at which to take the test also did not deny him due process. We hold that the notice and offer of assistance given to Gundersen complied with his due process right to challenge the result of the police-administered Intoximeter test.[10]

The judgment of the court of appeals is AFFIRMED.

BURKE, Justice, dissenting.

I dissent.

Today the court recognizes that "[a] positive Intoximeter test result is the single most important piece of evidence against a defendant accused of driving while intoxicated," and holds that "due process requires that the defendant be given an op-portunity to challenge" the reliability of such evidence by obtaining an independent test.

Dale Gundersen was arrested because he appeared to be too intoxicated to drive. Thereafter, he was tested and the test results showed him to have a blood alcohol content of .26. It is generally accepted that a person with a blood alcohol content between .15 and .20 is "obviously intoxicated."[1] Given these circumstances, it is questionable whether Gundersen was cognizant enough to understand a hurried recitation of his "rights," and difficult to accept that he "waived" those rights.

In the area of confessions, the state must show—by a preponderance of the evidence—the voluntariness of a confession. *Sprague v. State,* 590 P.2d 410, 413 (Alaska 1979); *Schade v. State,* 512 P.2d 907, 916–17 (Alaska 1973). Primary indicium of voluntariness are the defendant's capacities to understand both his rights and the consequences of waiving those rights. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *see also Zinermon v. Burch,* — U.S. —, ——, 110 S.Ct. 975, 987–88, 108 L.Ed.2d 100 (1990) (procedural due process violated where state officials allowed a mentally incompetent patient to sign an "informed consent" form for hospital admission). This court, and the court of appeals, have recognized the principle that an accused may be intoxicated to such an extent that a knowing and intelligent waiver is precluded. *Sprague,* 590 P.2d at 414; *Hampton v. State,* 569 P.2d 138, 141–43 (Alaska 1977); *Thessen v. State,* 454 P.2d 341, 345

---

**9.** AMC 9.28.023(E) is in all material respects identical to AS 28.35.033(e). *See supra* note 7.

**10.** Gundersen's argument that his due process right was violated because his statutory rights "become part of the 'process' that is 'due'" is frivolous. Gundersen's authority for this proposition, *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 749, 95 S.Ct. 1917, 1931–32, 44 L.Ed.2d 539 (1975), does not even address the question. The portion of the case that Gundersen cites refers to the judiciary's obligation to enforce a right which Congress creates. Specifically, the Court held that if Congress legislates the elements of a private cause of action for damages arising under the antifraud provision of section 10(b) of the Securities Exchange Act of 1934, the judiciary must administer the law: "the Judiciary may not circumscribe a right which Congress has conferred because of any disagreement it might have with Congress about the wisdom of creating so expansive a liability." *Id.* That the judiciary must enforce rights created by Congress does not imply that the rights created acquire constitutional significance.

**1.** *New York Public Library Desk Reference,* 650 (1989).

(Alaska 1969); *Van Cleve v. State,* 649 P.2d 972, 976 (Alaska App.1982).

In cases where the defendant's intoxication is merely incidental to the underlying crime, the majority's case-by-case review for involuntariness is appropriate. *See Phillips v. State,* 625 P.2d 816, 817 n. 5 (Alaska 1980). In cases where intoxication is an essential element of the crime charged, such as driving while intoxicated, the probability of an involuntary waiver of the accused's due process rights is high. The burden on the state to preserve a breath sample is, on the other hand, minimal. I would, therefore, as a prophylactic rule, require the state to take and preserve a breath sample for the defendant's later use. Whether the sample ultimately proves exculpatory, or inculpatory, is inapposite. What is important is the state's respect for the individual's capacity to understand and appreciate the nature of the due process rights afforded an accused.