**Stephen D. CRIM, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, Appellee.**

No. A–5507.

Court of Appeals of Alaska.

Sept. 29, 1995.

Michael B. Logue, Gorton & Associates, Anchorage, for Appellant.

Carmen E. ClarkWeeks, Deputy Municipal Prosecutor, Anchorage, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

### ORDER

IT IS ORDERED:

1. Memorandum Opinion and Judgment No. 3249 issued on September 20, 1995, is WITHDRAWN.

2. Opinion No. 1439 is issued on this date in its place.

Entered by direction of the Court at Anchorage, Alaska, on September 29, 1995.

### OPINION

BRYNER, Chief Judge.

The district court, sitting without a jury, convicted Stephen D. Crim of driving while intoxicated. Crim appeals, contending that the court erred by denying his motion to suppress evidence of his breath test result. We affirm.

On the evening of February 22, 1994, Crim sped through the gate to Elmendorf Air Force Base without stopping and knocked over two traffic cones. Anchorage Police Officer Rodney Ryan arrested Crim for driving while intoxicated and brought him to the police station for processing. At the station, after the observation period, Crim submitted to the breath test. Officer Ryan then read to Crim the notice of right to independent test while they waited for the intoximeter machine to process the breath sample. Crim answered without hesitation and apparently without confusion that he did not want to have an independent test performed. Several minutes later, Ryan informed Crim that his breath test result was 0.161.

Crim later moved to suppress his breath test result, arguing that he had not validly waived his right to an independent test, because he had not known his breath test result when Ryan informed him of the right to an independent test. After conducting an evidentiary hearing and reviewing the tape of Crim's processing at the police station, District Court Judge Stephanie Rhoades denied Crim's motion. Judge Rhoades found that Crim, although "clearly upset and intoxicated," had been "capable of listening, understanding and appropriately responding to the many questions put to him by law enforcement. He knew where he was and what was happening to him." The judge found that Crim had been informed of his right to an independent test and had been given "a reasonable opportunity to test the accuracy of the intoximeter." Judge Rhoades concluded that Crim had knowingly and voluntarily declined the offer of an independent test, notwithstanding the fact that he had not yet learned the intoximeter result. The intoximeter result was introduced in evidence at Crim's trial, and Crim was convicted. On appeal, Crim contends that Judge Rhoades erred by not suppressing the breath test result.

■ A driver arrested for driving while intoxicated has the due process right under

the Alaska Constitution to a reasonable opportunity to challenge the accuracy of the police-administered breath test. *Lau v. State*, 896 P.2d 825, 828 (Alaska App.1995). One way for the police to satisfy the demands of due process is to "effectively comply" with AS 28.35.033(e), the statute establishing a right to obtain an independent test of the driver's alcohol level.[1] Effective compliance requires, in part, that the police give the defendant "clear and express notice" of this statutory right. *Gundersen v. Anchorage*, 792 P.2d 673, 676–77 (Alaska 1990) (quoting *Anchorage v. Serrano*, 649 P.2d 256, 258 n. 5 (Alaska App.1982)).

■ A driver may relinquish the right to challenge the breath test, but only by a knowing and voluntary waiver of that right. *Gundersen*, 792 P.2d at 677. If the driver—due to intoxication or any other reason—fails to acquire "a basic understanding of the right to an independent test," then the driver's decision to decline the test cannot be considered a knowing and intelligent waiver. *Ahtuangaruak v. State*, 820 P.2d 310, 311 (Alaska App.1991).

In this case, Judge Rhoades specifically found that Crim had acquired a basic understanding of the right to an independent test, had been given "a meaningful opportunity to exercise his right to an independent chemical test," *id.* at 311, but had knowingly and voluntarily declined the opportunity. Judge Rhoades' factual findings are not clearly erroneous. The evidence presented below established that Ryan fully explained Crim's right to obtain an independent test; Crim understood the right and declined to exercise it.

■ Crim nevertheless argues that, without knowing the result of his mandatory breath test, he could not have assessed the potential advantages and disadvantages of availing himself of the right to an independent test. Crim maintains that, for this reason, he could not have knowingly and intelligently waived his right to the independent test. In advancing this argument, Crim essentially asks us to declare as a matter of law that no DWI arrestee can knowingly and intelligently decline to take an independent blood test before being apprised of the results of the mandatory breath test. But the need for such a rule is far from apparent.

The potential significance of a breath test is hardly the type of subtlety that will be lost on a typical DWI arrestee. Well before the result of a breath test is disclosed, the arrestee will ordinarily understand that it could have potentially devastating consequences and that it will not necessarily be accurate. This holds true for drunk and sober arrestees alike; if anything, a sober person mistakenly arrested for DWI will have more reason than an intoxicated arrestee to fear the consequences of an inaccurate breath test, and more reason to appreciate the potential benefits of an independent test.

Thus, in practical terms, a rule categorically declaring all pre-result waivers involuntary seems both artificial and uncalled for. As in other situations involving the relinquishment of legal rights, the totality of the circumstances should govern the determination of the voluntariness of a waiver of the opportunity to take an independent test.

In the present case, the fact that Crim did not yet know his test result was certainly one factor among many for the court to consider in determining whether Crim's decision to decline an independent test was knowing and voluntary.[2] However, there is nothing in the record suggesting that Crim's lack of knowledge of his own test result impaired his ability to understand the purpose of the test

---

1. AS 28.35.033(e) reads in part: "The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of the person's own choosing administer a chemical test in addition to the test administered at the direction of a law enforcement officer."

2. It would certainly have been preferable for Ryan to have waited for the test result before

asking Crim if he wanted an independent test. The record indicates that standard procedure calls for DWI arrestees to be informed of the right to an independent test only after the result of the mandatory breath test has been received. On cross-examination, Ryan, a new officer, acknowledged that he had not followed proper procedure with Crim.

he had already taken or the nature of his right to an independent chemical test.

Crim does not claim to have been misled as to the possibility of failing his breath test. The circumstances of his case provide no basis for concluding that he was incapable of understanding that possibility and its potential significance to his case. To the contrary, even without knowing the actual result of his test, Crim appeared to understand the gravity of his situation, that he had been arrested for driving while intoxicated, that the police had taken a sample of his breath for a reading of his alcohol level, and the significance of

an opportunity to have an independent test of his alcohol level.[3]

The record as a whole establishes that Crim voluntarily declined the offer of an independent blood test. Judge Rhoades did not err in denying Crim's motion to suppress.

We AFFIRM the conviction.

---

**3.** Furthermore, Crim does not claim that the police in any way suggested that his initial decision to decline the independent test was final—that he could not reconsider his decision after he learned the result of his breath test. Yet Crim made no request for, or even inquiry about, an independent test after the result of his breath test was disclosed.