Anthony F. ZEMLJICH, Appellant,

v.

**MUNICIPALITY OF ANCHORAGE,**
Appellee.

No. A–9364.

Court of Appeals of Alaska.

Nov. 24, 2006.

Stephanie Patel, Law Office of Dan Allan, Anchorage, for the Appellant.

Rachel Plumlee and Amy K. Doogan, Assistant Municipal Prosecutors, and Frederick H. Boness, Municipal Attorney, Anchorage, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

A police officer contacted Anthony F. Zemljich after he observed Zemljich in his vehicle talking to a young girl who was on the ground in a fetal position crying. As a result of this contact, Zemljich was convicted of driving under the influence. Zemljich argues that the trial court erred in finding that the officer had reasonable suspicion to stop him. He also argues that the trial court erred in ruling that he waived his right to an independent chemical test. We affirm Zemljich's conviction.

### Facts and proceedings

On August 29, 2004, at approximately 7:12 p.m., Anchorage Police Officer John Daily was driving south on Fairbanks Street toward Northern Lights Boulevard. As he approached the intersection, he saw Zemljich start to back out of the Office Lounge Bar parking lot. Both cars stopped, but eventually Officer Daily pulled past Zemljich's car and stopped at Northern Lights Boulevard so he could turn right onto Northern Lights Boulevard. As he was waiting for traffic to clear, Officer Daily looked in his rearview mirror and saw Zemljich drive north on Fairbanks Street and turn into the alley behind the Office Lounge.

After a "fair amount of time" waiting for an opening in traffic, Officer Daily turned

right onto Northern Lights Boulevard. As he passed the Office Lounge, he saw Zemljich's car stopped in an alley on the west side of the building, next to a young girl. The girl was on the ground in a fetal position and appeared to be crying. Officer Daily thought Zemljich was trying to pick up the girl or had done something to upset her.

Officer Daily turned into a parking lot and circled back to Zemljich and the girl. When Officer Daily was within 75 to 100 feet of Zemljich, Zemljich pulled his car forward and attempted to turn onto Northern Lights. However, the traffic was too heavy for Zemljich to pull out. Officer Daily pulled up behind Zemljich, turned on his overhead lights, and hit his siren twice. He got out of his car and started walking toward Zemljich. At that point, Zemljich began to pull into traffic. Officer Daily yelled at him, and Zemljich stopped and backed up, almost hitting Officer Daily's car.

Officer Daily made contact with Zemljich, obtained his identification, and told him to stay where he was. During this contact, he saw Zemljich put a breath mint in his mouth. He observed that Zemljich had bloodshot eyes, "droopy" eyelids, and smelled strongly of alcohol. And he noticed that Zemljich was slurring his speech, fumbling, and moving in a slow, uncoordinated manner.

Officer Daily then talked to the girl. The girl said she was crying because she had just had a fight with her best friend, not because of Zemljich. Officer Daily told her to go home. He then arrested Zemljich for driving under the influence.

While he was processing Zemljich for driving under the influence, Officer Daily read Zemljich a form about his right to an independent chemical test. Zemljich and the officer discussed Zemljich's right to an independent test both before and after the officer administered a breath test, which showed Zemljich had a blood alcohol level of .227 percent. Zemljich could not decide what to

do. Finally, he and the officer agreed that his decision was "indecision."

Before trial, Zemljich filed a motion to suppress all the evidence obtained as a result of this stop, arguing that the officer lacked reasonable suspicion for the stop. District Court Judge Sigurd E. Murphy denied the motion after an evidentiary hearing.

Zemljich then filed a motion to suppress the breath test result on the ground that he did not waive his right to an independent test. District Court Judge Brian K. Clark denied the motion, finding that Zemljich knowingly and intelligently waived his right to a test because he simply could not decide whether to exercise that right.

On July 19, 2005, after a bench trial based on stipulated facts, Judge Clark found Zemljich guilty of driving under the influence. Zemljich appeals.

*Discussion*

*Did the officer have reasonable suspicion for the stop?*

▬▬ Whether an officer has reasonable suspicion to make an investigative stop is a mixed question of fact and law.[1] We view the evidence in the light most favorable to the trial court's ruling and overturn the trial court's factual findings only if they are clearly erroneous.[2] We independently review whether those facts justify reasonable suspicion for the stop.[3]

▬▬ Police are authorized to perform an investigative stop when they have reasonable suspicion that imminent public danger exists or that serious harm to persons or property has recently occurred.[4] "A reasonable suspicion is one that has some factual foundation in the totality of the circumstances observed by the officer in light of the officer's knowledge."[5] Relevant factors include the extent of danger threatened by a potential crime or the seriousness of harm resulting from a

1. *State v. Garcia,* 752 P.2d 478, 480 (Alaska App. 1988).

2. *Id.*

3. *Id.*

4. *Coleman v. State,* 553 P.2d 40, 46 (Alaska 1976); *Garcia,* 752 P.2d at 480.

5. *Ozhuwan v. State,* 786 P.2d 918, 921 (Alaska App. 1990).

crime that has already been committed, the imminence of the threat or the recentness of the crime, the strength of the officer's reasonable suspicion, the opportunity for additional investigation, the intrusiveness of the stop, and deliberately furtive actions or flight at the approach of strangers or law enforcement officers.[6] The fundamental question is whether "a prompt investigation [was] required ... as a matter of practical necessity."[7]

In this case, the court found that the officer had a reasonable suspicion that Zemljich was "committing what would be the first act of enticing a child in for pedophil[ic] or other criminal purposes" or, in the alternative, that Zemljich had hit the child with his car and was leaving the scene of the accident. Both scenarios involve a serious harm, one that either was occurring or had recently occurred.[8] And both scenarios are supported by the circumstances observed by the officer.[9] In addition, the court found that when Zemljich pulled his car forward, the officer could reasonably suspect that he was trying to leave the scene of a felony. Zemljich's imminent departure added to the officer's reasonable suspicion and limited the officer's opportunity for additional investigation. And the stop was not excessively intrusive—the officer only asked Zemljich for his identification and told him to stay where he was until he talked to the girl.

Under the totality of the circumstances, "a prompt investigation [was] required ... as a matter of practical necessity."[10] We conclude that Officer Daily had reasonable suspicion to make the stop.

### Did Zemljich waive his right to an independent test?

■ Zemljich next argues that he did not waive his right to an independent test. A driver arrested for driving under the influence has a due process right under the Alaska Constitution to a reasonable opportunity to challenge the accuracy of a police-administered breath test.[11] One way for the police to satisfy due process is to "effectively comply" with AS 28.35.033(e), the statute establishing the right to an independent test of the driver's alcohol level, by, in part, giving the defendant "clear and express notice" of this statutory right.[12]

■ A driver may relinquish this right only by a knowing and intelligent waiver of the right.[13] This requires "a basic understanding of the right to an independent test,"[14] which is satisfied if the driver is notified of the right to an independent test, is aware that he or she was arrested for driving under the influence, and generally understands that the purpose of the independent test is to obtain evidence of his or her blood alcohol level.[15] However, it does not require that the driver be able to "assess[ ] the potential advantages and disadvantages of availing himself of the right to an independent test."[16]

---

6. *Dimascio v. Anchorage*, 813 P.2d 696, 698–99 (Alaska App.1991); *State v. G.B.*, 769 P.2d 452, 455–56 (Alaska App.1989).

7. *G.B.*, 769 P.2d at 456 (quoting *Coleman*, 553 P.2d at 46).

8. *See* AS 11.31.110, AS 11.41.434, & AS 12.55.125(c) (solicitation of first-degree sexual abuse of a minor is a class A felony with a sentencing range of up to 20 years); AS 28.35.060(a) & (c) (a driver who leaves the scene of an injury accident without providing assistance to injured persons is punishable by up to 10 years of imprisonment and a $10,000 fine). *See also Sullivan v. State*, 766 P.2d 51, 56 n. 5 (Alaska App.1988) (asking a minor to engage in sexual contact may constitute solicitation).

9. *See Coleman*, 553 P.2d at 46.

10. *Id.*

11. *Gundersen v. Anchorage*, 792 P.2d 673, 675–77 (Alaska 1990); *Lau v. State*, 896 P.2d 825, 828 (Alaska App.1995).

12. *Gundersen*, 792 P.2d at 676–77.

13. *Id.* at 677.

14. *Ahtuangaruak v. State*, 820 P.2d 310, 311 (Alaska App.1991).

15. *Moses v. State*, 32 P.3d 1079, 1084 (Alaska App.2001); *Crim v. Anchorage*, 903 P.2d 586, 588 (Alaska App.1995).

16. *Crim*, 903 P.2d at 588. *See also Moses*, 32 P.3d at 1084.

■■ Judge Clark found that Zemljich understood his right to an independent test and simply could not decide whether to exercise that right. We review this factual finding for clear error.[17]

The officer began by reading Zemljich the notice of his right to an independent breath test. Zemljich asked the officer for advice on whether to get an independent test and whether it would make a difference. He also expressed concern that the independent test might be used against him. Among other things, Zemljich said: "It doesn't matter either way, does it?"; "What's the difference ... between you and I as human beings?"; "I don't know what ... to do"; "Does it make a difference?"; "If I do this, it will be against me, right?"; "I don't know"; "How do I know which one is the right one?".

When Zemljich asked the officer what he should do, Officer Daily told Zemljich that he could not give him legal advice and could not make the decision for him. However, he explained that "basically, if you don't think that [the breath test] is going to be correct, that the reading on this is going to accurate, you can get your own test done to see what your test shows." When Zemljich asked him if getting an independent test would make a difference, Officer Daily stated, "This is an independent test if you want one—if you don't think this [breath test] machine is accurate, or if you just want an independent test." When Zemljich asked if the independent test would be used against him, the officer said the city could ask the court for a search warrant to get a copy of the results, "so, yes, in that way it could be used against you." In the end, Zemljich could not decide whether to exercise the right and agreed with the officer that his decision was "indecision."

Zemljich argues that he would have requested an independent test if he knew the test could have been used for his benefit.

However, he was notified of the right to an independent test, was aware that he had been arrested for driving under the influence, and generally understood that the purpose of the independent test was to obtain evidence of his blood alcohol level.[18] He was only undecided on whether or not it would be to his advantage to exercise the right. As noted above, the driver does not have to be able to "assess[ ] the potential advantages and disadvantages of availing himself of the right to an independent test."[19] We conclude that Judge Clark did not clearly err in finding that Zemljich understood his right to an independent test.[20]

■■ Zemljich also argues that, because he could not decide whether he wanted to seek an independent test, he never affirmatively waived his right to the independent test.

Zemljich points out that, in prior decisions, we have declared that the government cannot rely on an arrested driver's breath test result unless (1) the government provides the driver with an independent test or (2) the government shows that the driver knowingly and intelligently waived the right to an independent test. "A driver may relinquish the right to challenge the breath test [through the means of an independent test], but only by a knowing and voluntary waiver of that right."[21]

Thus, in *Ahtuangaruak v. State*,[22] we recognized that an arrested driver's decision to decline an independent test could not be considered a knowing and intelligent waiver of this due process right if the driver, due to extreme intoxication or any other reason, failed to acquire "a basic understanding of the right to an independent test."[23]

Zemljich's case, however, presents a different aspect of the waiver problem. The trial court found that Zemljich did, in fact, under-

**17.** *Crim,* 903 P.2d at 588.

**18.** *See Moses,* 32 P.3d at 1084 (citing *Crim,* 903 P.2d at 588).

**19.** *Crim,* 903 P.2d at 588. *See also Moses,* 32 P.3d at 1084.

**20.** *See Crim,* 903 P.2d at 588.

**21.** *Crim,* 903 P.2d at 588 (citing *Gundersen v. Anchorage,* 792 P.2d 673, 677 (Alaska 1990)).

**22.** 820 P.2d 310 (Alaska App.1991).

**23.** *Id.* at 311.

stand his right to an independent test, and that Zemljich understood the potential consequences—both favorable and unfavorable—of obtaining an independent test. Thus, if Zemljich had expressly declined the independent test, his case would look like the facts of *Crim v. Anchorage*[24]—a case in which we held that the driver validly waived the right to an independent test.[25]

The problem in the present case is that Zemljich could not make up his mind whether to ask for an independent test. He neither expressly requested an independent test nor expressly declined one. Rather, he was unable to decide whether an independent test would advance his interests, so he told the officer that his decision was "indecision."

In many instances, a defendant's inability to decide will not constitute a knowing and intelligent waiver of a constitutional right. For example, if a defendant cannot decide whether to waive the right to counsel, or the right to jury trial, there will be no waiver.[26]

But as we explained in *Knix v. State*,[27] the rule of "no waiver" in these situations is simply a reflection of the fact that, in such circumstances, the law provides a default answer to the problem posed by the defendant's indecision.[28] If the defendant will not waive the right to counsel, the defendant will have counsel; similarly, if the defendant will not waive the right to jury trial, the case will be tried to a jury. *Knix*, on the other hand, involved a situation where the law provided no default solution: the defendants in *Knix* could not decide whether to testify at trial or to remain silent (*i.e.*, refrain from taking the stand).[29]

This was a problem because, in *LaVigne v. State*,[30] the Alaska Supreme Court declared that trial judges should not allow the defense case in a criminal trial to end until the defendant had either taken the stand or voluntarily waived the right to testify.[31] The defendants in *Knix* refused to choose whether to testify, so the trial judge declared that the trial would continue without the defendants' testimony.[32]

On appeal, the defendants in *Knix* argued that the trial court had not properly elicited from them an on-record waiver of their right to testify.[33] We held that, under such circumstances, the law did not require an express waiver. As we explained in *Knix*:

> Most constitutionally guaranteed procedural rights stand alone, without any constitutionally guaranteed equal-but-opposite corollary. For example, a criminal defendant enjoys the right to be tried by a jury but has no opposing constitutional right to be tried before a judge alone.... In the absence of a clear waiver of the right to a trial by jury, the right [will] be preserved by ordering the defendant to stand trial before a jury[.]

> [Even with regard to] the constitutionally protected right to counsel, whose corollary is the constitutionally protected right to self-representation[,] ... the right to counsel is clearly dominant, and [the] right to self-representation clearly subordinate. A criminal defendant who does not affirmatively and expressly waive the right to counsel must proceed with legal representation....

> [But with regard to the] right to testify and its corollary, the right to silence ... [, b]oth are fundamental and constitutionally enshrined. Neither has been established as clearly dominant over the other; they are equally vital.... [Moreover,] the two rights are mutually exclusive. A defendant cannot simultaneously exercise the

**24.** 903 P.2d 586 (Alaska App.1995).

**25.** *Id.* at 588–89.

**26.** *See Gladden v. State,* 110 P.3d 1006, 1007 (Alaska App.2005) (defendant must unequivocally waive the right to counsel); *McGlauflin v. State,* 857 P.2d 366, 369 (Alaska App.1993) (defendant must explicitly waive the right to a jury trial).

**27.** 922 P.2d 913 (Alaska App.1996).

**28.** *Id.* at 918 n. 6.

**29.** *Id.* at 918–19 n. 6.

**30.** 812 P.2d 217 (Alaska 1991).

**31.** *Id.* at 222.

**32.** *Knix,* 922 P.2d at 919.

**33.** *Id.* at 917.

right to testify and [the right] to remain silent. The exercise of one right necessarily entails a relinquishment of the other.

Given the . . . relationship of these corollary rights, a rule actually requiring an on-record, voluntary waiver of the right to testify leads to a profound conundrum: what is to be done in the case of a defendant who is unwilling to knowingly and voluntarily relinquish either the right to testify or the right to remain silent? There is seemingly no default option. If a defendant stands mute in the face of a *LaVigne* inquiry or expresses continuing confusion over the court's explanation of procedural rights, a finding of voluntary waiver of the right to testify might strain law and logic. Yet the trial court cannot direct the defendant to testify; nor would it be a palatable alternative to abort the trial—a measure that would put the power of mistrial in the hands of virtually any enterprising defendant.[34]

Accordingly, we upheld the trial judge's decision to order the trial to proceed without the defendant's testimony.[35]

Zemljich's case presents an analogous problem. Zemljich had a due process right to demand an independent test, but he also had a right to refrain from consenting to another seizure and analysis of physical evidence from his body. Zemljich understood his options, but he was unable to decide what to do.

Because Zemljich was unable to decide, the arresting officer was confronted with the same type of conundrum that confronted the trial judge in *Knix*: the arrest process had to go forward, even though Zemljich refused to commit himself to either demanding or declining the independent test.

We hold that, in such situations, the law does not require the government to obtain the defendant's express waiver of the right to an independent test. It is sufficient that a defendant be informed of the right to an independent test, that the defendant understand this right, and that the defendant be

provided a "reasonable opportunity to obtain an independent test." [36]

Here, Zemljich understood his right to an independent test, and he was given a reasonable opportunity to exercise that right. He simply could not decide whether to take advantage of it. Given these circumstances, the government satisfied its duty, and Zemljich's breath test result was admissible.

### *Conclusion*

The judgment of the district court is AFFIRMED.

---

**34.** *Knix,* 922 P.2d at 918 n. 6.

**35.** *Id.* at 919.

**36.** *Gundersen,* 792 P.2d at 676 n. 6.